[No. F015985. Fifth Dist. Feb. 20, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DEON KIRKLIN WILLIAMS, Defendant and Appellant.

## COUNSEL

David S. Reeves, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Acting Anderson, Acting Assistant Attorney General, and Wanda Hill Rouzan, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BEST, P. J.**—Deon Kirklin Williams pleaded guilty to a violation of Health and Safety Code section 11350 and admitted Penal Code section 1203, subdivision (e)(4) and Health and Safety Code section 11370 enhancement allegations. He contends the court erred in denying his motion to suppress rock cocaine found in his pocket. A police officer stopped defendant for riding an unlicensed bicycle and, after ascertaining he was on parole, patsearched him for weapons. We will reverse.

### FACTS AND PROCEDURAL HISTORY

In the afternoon of January 21, 1991, Modesto Police Officer Ryan saw defendant, whom he knew by name, riding an unlicensed bicycle in violation of the city municipal code. When Ryan stopped to warn or cite defendant for the infraction, he asked if he was on probation or parole. Ryan testified, for safety reasons, he routinely asks persons he stops for a violation of the law if they are on probation or parole. When defendant replied he was on parole, Ryan said he was going to search him for weapons. Ryan patsearched defendant. Ryan felt a small, hard, rock-like object which he believed was rock cocaine in the pocket of defendant's "very thin" nylon jacket. Ryan spread open the pocket and saw a white rocky substance which he believed was rock cocaine. Defendant was then arrested for possession of cocaine base.

The court denied defendant's motion to suppress evidence (Pen. Code, § 1538.5) finding when an officer determines that a person he has seen violate the law is on parole, a patsearch is not a substantial intrusion and was lawful under the circumstances of this case.

### DISCUSSION

■ Our standard of review on appeal from the denial of a motion to suppress is well established. We defer to the trial court's factual findings

where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure was reasonable under Fourth Amendment standards. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

### A. The Legality of the Patsearch

Defendant contends the mere fact he was on parole is insufficient grounds to conduct a patsearch for weapons. The People contend since defendant violated the law, his current status as a parolee justified the search. We conclude defendant has the better argument.

In *Terry* v. *Ohio* (1968) 392 U.S. 1, 30 [20 L.Ed.2d 889, 911, 88 S.Ct. 1868], the Supreme Court held that a police officer may conduct a limited investigative detention of a person he reasonably suspects is involved in criminal activity and subject that person to a patdown search for weapons where the officer has reason to fear for his safety. While a police officer may legally stop a motorist he suspects of violating the law for the purpose of issuing a citation (*People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1458 [266 Cal.Rptr. 587]), he may not routinely search him or her for weapons without specific articulable facts furnishing grounds to believe the motorist may be armed. (*People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 206 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Maxwell* (1988) 206 Cal.App.3d 1004, 1008 [254 Cal.Rptr. 124].)

In *In re Marcellus L.* (1991) 229 Cal.App.3d 134 [279 Cal.Rptr. 901], the court concluded there were no articulable facts justifying a patsearch where an officer approached a minor sitting in front of a residence and asked him his name and why he was not in school. The minor told him he was between transfers. The officer decided to investigate why the minor was not in school but first conducted a patsearch for " 'safety reasons.' " The minor did nothing threatening and the officer did not have reason to believe he was armed and dangerous. Nevertheless, the officer patsearched the minor " 'for my safety, as I do everytime I go into the area [known for drug dealing and shootings] and contact someone.' " During the patsearch the officer found rock cocaine in the minor's pocket. (*Id.* at p. 138.) The court concluded the officer had no legitimate reason to frisk the minor because he had no belief, reasonable or otherwise, that the minor was armed and dangerous. (*Id.* at p. 138, fn. 2.)

The frisk in this case, aside from defendant's status as a parolee, is indistinguishable from that in *Marcellus L.* Defendant was stopped in the afternoon on a city street for riding an unlicensed bicycle. He exhibited no

threatening or suspicious conduct. He did nothing which could lead Officer Ryan to believe he was armed and dangerous. Thus, unless defendant's parole status provided cause to frisk him or the patdown was a valid parole search, the patsearch was unlawful.

*1. Did defendant's parolee status justify the frisk?*

■ While a detainee's status as a parolee is not irrelevant to the officer's determination to frisk him, parolee status alone does not furnish grounds to believe he may be armed. In certain cases, the officer's knowledge of the nature of the parolee's prior offense will render a frisk reasonable, such as, if the detainee had previously used a weapon. (See 4 LaFave, Search and Seizure (2d ed. 1987) Searches Directed at Parolees, § 10.10(d), p. 149.) In other cases, a frisk may be justified based on the parolee status in combination with furtive movements, unidentifiable clothing bulges, or the nature of the offense the officer is investigating. (See, e.g., *People* v. *Miles* (1987) 196 Cal.App.3d 612, 618 [242 Cal.Rptr. 107]; *People* v. *Loudermilk* (1987) 195 Cal.App.3d 996, 1000, 1002 [241 Cal.Rptr. 208].) Additionally, the search would be proper if defendant were taken into custody. (*United States* v. *Robinson* (1973) 414 U.S. 218, 235 [38 L.Ed.2d 427, 440-441, 94 S.Ct. 467].) However, prior to the patsearch, there were no grounds to take defendant into custody for the ordinance violation.[1] Thus, we find no authority permitting Officer Ryan to frisk defendant simply because he was on parole.

*2. Was the search a valid parole search?*

The People argue the patsearch was justified as a parole search. We disagree.

■ All parolees are subject to a search condition: "You and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections or any law enforcement officer." (Cal. Code Regs., tit. 15, § 2511.) The justification for exempting parole searches from the warrant requirement of the Fourth Amendment is that these searches are necessary for effective parole

---

[1] A violation of the Modesto bicycle licensing ordinance (Modesto Mun. Code, ch. 3, § 3-3.02, subd. (a)) is an infraction. (Veh. Code, §§ 40000.1, 39002, subd. (a).) An infraction is not punishable by imprisonment. (Pen. Code, § 19.6.) When a person is arrested for an offense declared to be an infraction, the person is ordinarily released after the officer prepares a notice to appear and the person arrested gives his written promise to appear in court as specified in the notice. Only if the arrestee refuses to present written identification or to sign the written promise to appear may he be taken into custody. (Pen. Code, §§ 853.5, 853.6, subd. (a).)

supervision. (*People* v. *Burgener* (1986) 41 Cal.3d 505, 534 [224 Cal.Rptr. 112, 714 P.2d 1251].) Thus, the appropriate standard to justify a parole search is: "a reasonable suspicion on the part of the parole officer that the parolee is again involved in criminal activity, or has otherwise violated his parole, and that the search may turn up evidence of that activity, or that evidence of a proposed future violation by the parolee will be uncovered. That suspicion must of course be based on articulable facts which together with rational inferences from those facts warrant objectively reasonable suspicion. [Citation.]" (*Id.* at p. 535.)

Although *Burgener* refers to a parole agent who authorizes police officers to search upon reasonable suspicion, the opinion stressed "[t]hat the search was conducted by law enforcement officers for a law enforcement purpose is irrelevant." (*People* v. *Burgener, supra*, 41 Cal.3d at p. 536.) The purpose of the search, not the presence of a parole agent, is the vital element. (*People* v. *Montenegro* (1985) 173 Cal.App.3d 983, 987 [219 Cal.Rptr. 331].) ■ Therefore, a police officer may conduct a valid parole search if he has information regarding a possible parole violation or criminal activity which necessitates further investigation, including a search of the parolee for evidence of the suspected violation. (*People* v. *Burgener, supra*, 41 Cal.3d at pp. 535-536.)

■ In this case, Officer Ryan observed defendant violate a condition of parole which required defendant to obey all laws. However, given the nature of the offense—riding an unlicensed bicycle—Officer Ryan could not have conducted the patsearch with the expectation of turning up evidence related to that offense or based on the need for further investigation relative to the offense. Thus, under the *Burgener* standard, the patsearch was improper.

Moreover, the patsearch cannot be justified by defendant's lesser expectation of privacy given his parole status. In *In re Marcellus L., supra*, 229 Cal.App.3d at pages 139, 145, the court held that a minor's general *probationary* search clause rendered him without standing to object to an officer's objectively unreasonable frisk. The court reasoned, " 'a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of Fourth Amendment protection.' [Citation.]" (*Id.* at p. 145.) The court stressed, however, the constitutional rights of probationers cannot be equated with those of parolees.

First, the probationer has consented to waive his Fourth Amendment rights, the parolee has not; a defendant may refuse probation, a parolee must accept parole. Second, probation is an act of "judicial grace or clemency,"

while a grant of parole is a mandatory act trusted to an administrative agency—the Board of Prison Terms. A parolee is said to have earned his release from prison by proving through good prison conduct his suitability for rehabilitation. (*In re Marcellus L., supra,* 229 Cal.App.3d at p. 142.) Unlike parole, probation is granted by the court when the sentencing judge deems the protection of society does not demand immediate incarceration. It is not granted because of any merit or worthiness of the wrongdoer. Parole, on the other hand, is the result of an investment of discipline in a prisoner who has earned the rewards of a milder form of punishment more effectively suited to prepare him for society and to his rehabilitation. (*Ibid.*) Thus, while the Supreme Court found it necessary to balance the parolee's privacy interest with the societal interest in public safety (*People v. Burgener, supra,* 41 Cal.3d at p. 535), no such balancing is necessary in probation cases. (*In re Marcellus L., supra,* 229 Cal.App.3d at p. 143.)

■ Accordingly, while a parolee has a lesser expectation of privacy than the ordinary citizen, diminution of a parolee's Fourth Amendment rights is justified only to the extent actually necessitated by the legitimate demands of the parole system. (*People v. Burgener, supra,* 41 Cal.3d at p. 534.) ■ Moreover, parolee status alone does not justify a search by peace officers other than parole agents. (*People v. Montenegro, supra,* 173 Cal.App.3d at p. 987.) ■ A frisk for weapons every time a parolee is detained by a peace officer for a traffic violation, however petty, is not justified for parole supervision purposes.

For the same reason, the search cannot be justified under the theory a parolee is in "constructive custody" and has no more rights than a prisoner in his cell. ■ As the *Burgener* court pointed out:

"The conditions which necessitate and thereby justify this total curtailment of a prisoner's Fourth Amendment rights are not present once he is free on parole. His expectation of privacy is not diminished by the surveillance which is a concomitant of a confinement in prison. . . . [¶] [We] recogniz[e] that parolees and probationers 'have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities "reasonable" which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands.' " (41 Cal.3d at pp. 530, 531.)

Therefore, when a prisoner is released on parole, a reweighing of the balance between individual and societal interests in light of the parolee's current status is in order. (41 Cal.3d at p. 531.)

"Although a parolee is no longer confined in prison his custody status is one which requires and permits supervision and surveillance under restrictions which may not be imposed on members of the public generally. (*People v. Burgener, supra,* 41 Cal.3d at p. 531.)

"The interest in parole supervision to ensure public safety . . . permits restrictions on parolees' liberty and privacy interests. Balancing these interests of the parolee against the societal interest in public safety leads us to conclude that warrantless searches of parolees are not per se unreasonable if conducted for a purpose properly related to parole supervision. (*People* v. *Burgener, supra,* 41 Cal.3d at p. 532.)

"To say that a parolee is subject to warrantless search is not to say that his privacy interest is so diminished that random searches or searches unrelated to a proper parole supervision purpose are reasonable and constitutionally permissible. The justification for exempting parole searches from the warrant requirement of the Fourth Amendment is that these searches are necessary for effective parole supervision. If the search is to have a parole supervision purpose therefore it must be based on information which leads the parole agent who conducts or authorizes the search to believe that the parolee has violated the law or another condition of his parole. . . . A parole search must therefore be directly and closely related to parole supervision in order to avoid unreasonable invasion of the privacy interests of the parolee . . . ." (41 Cal.3d at pp. 533-534.)

Accordingly, where an officer has a reasonable suspicion that a parolee is in possession of evidence relating to a violation of the law or other condition of parole, or has evidence of a future plan to violate parole, the officer may conduct a parole search. ■■■ However, where as here, the officer has detained a parolee for a traffic infraction and has no reasonable suspicion that a search will produce such evidence, the search cannot be justified as a lawful parole search. Finding no lawful authority for the patsearch, we must order suppression of the contraband found in defendant's pocket.

DISPOSITION

The judgment is reversed.

Vartabedian, J., and Thaxter, J., concurred.