**UNITED STATES of America, Plaintiff,**

v.

**William Luke CARNES, Defendant.**

No. 97–80053.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 8, 1997.

James C. Mitchell, Asst. U.S. Attorney, Mark W. Osler, Asst. U.S. Attorney, Detroit, MI, for Plaintiff.

Richard J. O'Neill, Federal Defenders Office, Detroit, MI, for Defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

ROSEN, District Judge.

### I. INTRODUCTION

In this case, Defendant William Luke Carnes is charged in the Indictment with one Count of Felon in Possession of a firearm in violation of 18 U.S.C. § 922(g). This matter is before the Court on Defendant's May 27, 1997 Motion to Suppress Evidence. Defendant contends that on January 14, 1997, a firearm and other evidence were seized pursuant to an illegal search of 1731 Harmon, Auburn Hills, MI. The Government responds that the search and seizure were permissible under *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), because the search was authorized under state law since there were reasonable grounds to believe that Defendant violated the conditions of his parole.

Defendant requested an evidentiary hearing on these issues, as well as the opportunity to file post-hearing briefs. The Court held an evidentiary hearing on July 17, 1997, and received supplemental briefs thereafter. The Court is now prepared to rule on this matter.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is currently serving three concurrent lengthy sentences in state prison for breaking and entering and possession of burglar tools. (Government's Response ("GR"), Ex. 1, Parole Violation Report, p. 1). On November 2, 1994, Defendant was released to electronic monitoring and paroled on January 5, 1996. (*Id.* at p. 2). Defendant's parole conditions require, *inter alia,* that: (1) he not commit further crimes and (2) he reside at the address that he gave to the parole office. (GR, Ex. 2, Parole Board Notice of Parole). At the time of his parole, Defendant was to reside with his sister on Moravian Road in Clinton Township (Macomb County), MI, where he had been living while on electronic tether. (GR, Ex.1, Parole Violation Report, pp. 2–3).

On December 17, 1996, the Troy Police Department notified Defendant's Parole Officer, Lynn Michaelson, that a concerned Troy resident had reported seeing Defendant driving slowly through a "fashionable" Troy neighborhood and pulling into various driveways. (*Id.* at p. 3). Thereafter, in consultation with Michaelson, the Troy Police began surveillance of Defendant. (*Id.*). Over the course of 3 weeks, the Troy Police observed Defendant go to the Moravian Road residence only once and they determined that he was in fact living at 1731 Harmon Road in Auburn Hills, relying in part on the consistent presence of one of his cars at this address during the surveillance period. (*Id.;* GR, Ex.3, Preliminary Parole Violation Hearing, p. 5).

On December 29, 1996, during the course of their surveillance, the Troy Police apparently observed Defendant illegally enter his girlfriend's house in Auburn Hills and thereafter, he allegedly assaulted her. (GR, Ex.1, Parole Violation Report, p. 3). Consequently, the Auburn Hills Police obtained a January 2, 1997 warrant for Defendant's arrest for illegal entry and assault and battery. (*Id.;* Defendant's Motion to Suppress ("MS"), p. 1).

On January 7, 1997, the Auburn Hills Police contacted Michaelson and informed her of the arrest warrant, whereupon she advised them that Defendant's next parole report date was January 9, 1997. (GR, Ex.1, Parole Violation Report, p. 3). The Auburn Hills Police asked Michaelson to take Defendant into custody on January 9, 1997 because of "uncontrollable harassment" of his girlfriend. (*Id.*). However, on January 9, 1997, Defendant called Michaelson claiming that he would be unable to report because of bad weather. (*Id.*). Although Michaelson insisted that Defendant report that day by 6:00 PM, he failed to report. (*Id.*) Thereafter, Defendant called back several times, requesting a different report date. (*Id.*). Michaelson informed Defendant that if he did not report on January 13, 1997, she would have an absconder warrant issued for him. (*Id.*).

When Defendant failed to report on January 13, 1997, Michaelson requested a parole absconder warrant. (*Id.*).

On January 14, 1997, the Auburn Hills Police contacted the parole office, requesting assistance in apprehending Defendant on the outstanding warrant for illegal entry and assault and battery. (*Id .*). Because Michaelson was on sick leave, Parole Officers Mytinger and Ciarlo responded to the call and met the Auburn Hills Police at 1731 Harmon. When the parole officers and the police entered the residence, Defendant attempted to flee out a window, but he was eventually captured outside. (GR, Report of Preliminary Parole Violation Hearing, Ex.3, p. 3). Subsequent to apprehending Defendant, the parole officers and the police searched the residence, finding a loaded gun in a locked box, several boxes and rounds of ammunition, four knives exceeding 11" in length, a radio stolen from the Royal Oak Police Department, marijuana, alcohol, and burglar tools. (GR, p .2; Gr, Ex.4, Inventory).[1]

### III. *ANALYSIS*

In response to Defendant's Motion to Suppress, the Government argues that the warrantless search of 1731 Harmon is within the governmental "special needs" exception to the Fourth Amendment warrant requirement, pursuant to *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987) (warrantless search of probationer's home pursuant to a regulation that satisfies the Fourth Amendment's reasonableness requirement complies with the Fourth Amendment). Defendant, however, replies that: (1) the search is inconsistent with Michigan case law; (2) the search is inconsistent with the applicable Michigan parole regulations and policies; and (3) the search is beyond the scope of the *Griffin* decision.

### A. *The Search Was Consistent with Michigan Law.*

Defendant's first two arguments urge the Court to find that the search is invalid as a

matter of Michigan law under *People v. Peterson*, 62 Mich.App. 258, 233 N.W.2d 250 (1975), *People v. Overall*, 7 Mich.App. 153, 151 N.W.2d 225 (1967) and Michigan Department of Corrections Policy Directive number 06.01.130, Subject Absconder Recovery Unit. For the reasons discussed below, the Court rejects each of these arguments.

### 1. *Defendant's Arguments*

The cases cited by Defendant do not support his contention that the search violated Michigan law. In *Peterson*, the defendant appealed a plea of guilty pursuant to which she was placed on five years probation, arguing that the conditions of her probation were unreasonable. In particular, the defendant challenged the search and seizure provision in the order of probation which provided:

> That the person of probationer, and any and all premises and vehicles, owned or occupied by said probationer, shall be open to search at any and all times by the probation officer and by law enforcement officers without a search warrant therefor.

*Peterson, supra*, 233 N.W.2d at 254–55. The Court analyzed this probation provision in the following manner:

> We strike it down. Probation is a matter of grace and rejectable, we think, at the option of the probationer. But it is not a Bill of Attainder for the period of probation.
>
> Probation or parole is certainly no more stigmatic than incarceration. Thus if there be any logic in law, a probationer is no less deprived of all constitutional guarantees than the one incarcerated pursuant to sentence. Our Supreme Court held:
>
>> 'It could not be seriously urged that the search and seizure made by the officers without defendant's consent or without a search warrant could not, nor likely would not even have been attempted, had defendant been at liberty and his automobile been parked on his own

1. On February 19, 1997, the illegal entry and assault and battery charges were dismissed because Defendant's girlfriend refused to cooperate with the authorities. Nevertheless, on February 18, 1997, Defendant was arraigned on a "Peeping Tom" charge stemming from his activities in the Troy neighborhood.

premises. Defendant was not stripped of his civil rights and his constitutional safeguards merely because he was serving a sentence in the county jail for an unrelated misdemeanor. It would be a dangerous rule of law and an invitation to circumvent the constitutional guaranty against unreasonable search and seizure were the citizen convicted of a misdemeanor and in jail, possibly in default of payment of a fine to be stripped of all his civil liberties.'

*People v. Carr,* 370 Mich. 251, 255, 121 N.W.2d 449, 451 (1963).

If this means standard forms must be revised or a portion thereof x'd out, so be it. Better that, than police state powers over all probationers. We readily concede that there is much authority to the contrary. Our research has uncovered many cases from other jurisdictions which sustained the same imposition of consent to warrantless searches and seizures as were here imposed. However, the waiver of protection against unreasonable searches and seizures is so repugnant to the whole spirit of the Bill of Rights as to make it alien to the essence of our form of government.

We would not be understood by this holding to mean that one who accepts probation and consents to its terms cannot waive any constitutional rights. Many of these rights are waived daily in our criminal courts, the right to a trial by jury for example. They can be waived also as a condition of probation. But when the waiver is conditioned on the surrender of so hallowed a right, the so-called choice amounts to no choice at all. We hold the probationer's signed acceptance thereof was in legal effect coerced and thus rendered nugatory.

*Peterson, supra,* 233 N.W.2d at 255.

In *Overall,* the parolee-defendant challenged his murder conviction on appeal, arguing that a firearm that was admitted into evidence was obtained by illegal search. The murder victim here was killed by a gunshot wound from .380 caliber pistol on March 16, 1961. After the murder, the police received the following information: (1) the defendant was involved in an armed robbery in which a .380 caliber pistol was used; (2) such a weapon had been seen in a bedroom occupied by defendant and another person in a residence owned by the defendant's grandmother; (3) heroin had been found at the scene of the murder; and (4) the defendant was a heroin user.

In response to this information, 2 police officers and the defendant's parole officer went to the grandmother's residence to arrest the defendant for murder, even though they had neither an arrest warrant nor a search warrant. After conducting surveillance of the house for 12 hours, the officers knocked on the front door; greeted the defendant's father and grandmother; learned from them that the defendant was not at home; and eventually searched the defendant's bedroom and found the gun. It was disputed as to whether the grandmother, the owner of the house, gave the officers permission to perform this search.

In suppressing the gun, the Michigan Court of Appeals first found that, regardless of his grandmother's consent, such authorization is not binding on the defendant, as there was no showing that he waived his right to an unreasonable search or that he himself consented to the search. Next, the Court turned to the State's argument that the search was justified because: (1) the defendant was on parole; (2) his parole officer was present; and (3) the parole officer was, by authority of P.A. 1953, No. 232, § 38, C.L. 1948, § 791.238 (Stat.Ann. 1954 Rev. § 28.2308), authorized to search the parolee because he was deemed to be on escape status. Here, the Court remained unpersuaded that the search was permissible, reasoning as follows:

We read *People v. Carr,* 370 Mich. 251, 121 N.W.2d 449 (1963), to hold to the contrary. It is true that Carr was in jail for a misdemeanor at the time of the unlawful search and defendant was on parole from a felony conviction when the search here involved was made, but we do not believe this difference is a legitimate basis for distinguishing the basic doctrine of *Carr,* namely: "Imprisonment for an unrelated crime does not strip one of all his civil rights and constitutional safeguards

against unreasonable searches and seizure."

*Overall,* 151 N.W.2d at 227.

Although not specifically relied upon by Defendant, it is obvious that the *Carr* decision is fundamental to Defendant's argument. Thus, the Court will also review the *Carr* decision.

In *Carr,* the defendant was arrested and jailed for operating his automobile with a defective tail light. Thereafter, the car was found to contain stolen property. Defendant pleaded guilty to the possession of stolen property and began serving a 30-day sentence. During this time, his car was stored in the jail parking lot. Taking advantage of where the car was stored, a state trooper, without any warrant or the defendant's permission, searched the car; removed objects from the car, including a monkey wrench; analyzed paint scrapings from the car and from the jaws of the monkey wrench; and took the car to another county and compared it with tire tracks left at the robbery scene of a liquor store. Eventually, the defendant was convicted in the liquor store robbery.

In granting the defendant a new trial and finding that the fruits of this search were inadmissible, the Court stated the following:

> Here a search of the defendant's … automobile was made without a search warrant, without cause, probable or otherwise related to the alleged crime, without any basis other than possibly understandable suspicion. Such a search and seizure was made in patent violation of the State Constitution of 1908, art.2, § 10.

*Carr, supra,* 370 Mich. at 256, 121 N.W.2d 449.

### 2. *The Cases Defendant Relies on Are Not Helpful to the Court's Resolution of this Matter.*

As an initial matter, the Court notes that *Carr* is both factually and legally distinguishable from the instant case. First, the search and seizure in *Carr* were not pursuant to any supervisory or regulatory scheme, rather a rogue officer decided to take advantage of the defendant's incarceration to conduct his own investigation into a matter that was apparently unrelated to the crime underlying the incarceration. Second, the holding of the case is that the conduct there violated the Michigan constitution, whereas here, Defendant challenges the search and seizure under the federal Constitution.

*Peterson* and *Overall* stand for the proposition that search and seizure provisions in probation/parole orders, regulations, and statutes which effectively waive a person's right to be free from unreasonable searches and seizures are unconstitutional. The Court, however, finds that: (1) these decisions are very much infirm in light of recent Michigan precedent; and (2) they do not interpret the state law that is at issue here.

Two more recent Michigan Court of Appeals cases suggest that *Peterson* and *Overall* are no longer good law because these cases hold that warrantless searches and seizures in the parole/probation context are constitutionally permissible. *People v. Hellenthal,* 186 Mich.App. 484, 485–86, 465 N.W.2d 329, 330 (1990); *People v. Woods,* 211 Mich. App. 314, 317–18, 535 N.W.2d 259, 261–62 (1995).

In *Hellenthal, supra,* the defendant's drug possession convictions arose from the discovery of marijuana and cocaine during a search of his residence conducted without a warrant. The defendant was on probation at the time because of prior marijuana and cocaine-related convictions. The search was conducted pursuant to a condition in his probation order requiring him to submit to a search, without a warrant, of his person, vehicle, or residence for controlled substances. On appeal, the defendant argued that the marijuana and cocaine should have been suppressed because the condition of his probation order was unlawful since it violated his Fourth Amendment right to be free from unreasonable searches and seizures.

The Michigan Court of Appeals affirmed the conviction, stating that:

> Although we acknowledge that this Court's holding in *People v. Peterson,* 62 Mich. App. 258, 233 N.W.2d 250 (1975), *lv. den.,* 397 Mich. 811 (1976), supports defendant's argument, we decline to follow that decision. Instead, we believe that a waiver of one's constitutional protections against un-

reasonable searches may properly be made a condition of a probation order where the waiver is reasonably tailored to defendant's rehabilitation.

*Hellenthal, supra,* 465 N.W.2d at 330.

In *Woods, supra,* the defendant-prisoner was released from a state penal institution and placed in his own home to serve the balance of his sentence pursuant to the Community Residential Program ("CRP"). Thereafter, a robbery was committed which fit the prisoner's modus operandi. Moreover, the police learned that during the time of the crime, the prisoner was on escape status, as he had apparently damaged his electronic tether, which gave the police the right to arrest defendant as though a bench warrant had been issued. Pursuant to Department of Corrections regulations which provided for warrantless searches of inmates' living areas and vehicles, the police proceeded to search the defendant's home. He challenged this search on appeal after pleading guilty to the breaking and entering.

At the outset of its analysis, the Court noted that a prisoner in the CRP was analogous to a probationer or a parolee and that each had some limited protection of their privacy interest. Then the Court dropped the following footnote:

In light of defendant's status as a prisoner within the CRP, an argument can be made that his expectation of privacy is even less than that of a probationer or parolee. However, we believe that placement in the CRP should be found to be analogous to parole; in both situations the prisoner has demonstrated, through his behavior, that he is not required to remain in prison. The California Court of Appeals offered a thorough explanation of the rationale for parole searches in *People v. Williams,* 3 Cal.App.4th 1100, 5 Cal.Rptr.2d 59 (1992). The *Williams* Court held that parole searches without warrants should be directly and closely related to parole supervision in order to avoid an unreasonable invasion of the parolee's privacy interests. *Id.* at 1108, 5 Cal.Rptr.2d 59. Further California courts have ruled that the warrantless search of a parolee's home, pursuant to a condition of parole, is reasonable

under the Fourth Amendment "if there is a reasonable nexus (a direct and close relationship) between the search and the parole process, and a reasonable suspicion, based on articulable facts, that the parolee has violated the terms of his parole or engaged in criminal activity." *People v. Johnson,* 47 Cal.3d 576, 594, 253 Cal.Rptr. 710, 764 P.2d 1087 (1988). However, there is no clear rule in this area. *See* 59 Am. Jur.2d, Pardon and Parole, § 94, p. 94. *See also, Latta v. Fitzharris,* 521 F.2d 246, 250 (9th Cir.1975).

*Woods, supra,* 535 N.W.2d at 261–62 n. 2.

Next, the Court stated the following:

Utilizing Fourth Amendment standards, we find that the administrative search of defendant's home was reasonable. Michigan Department of Corrections policy directives, in place at the time defendant committed the offenses, provided for searches of an inmate's living area and vehicles by field service staff members. Defendant was on escape status at the time the crimes were committed and the crimes fit his modus operandi of past offenses. Moreover, a plain view observation of defendant's car revealed that the rear tire tracks were very similar to those left at the crime scene, with one tire being noticeably wider than the other. In sum, defendant's field officer had a reasonable suspicion that defendant was engaged in criminal conduct or had violated the CRP's rules. Therefore, the officer was justified in conducting a search of his residence, pursuant to Department of Corrections rules and regulations.

*Woods, supra,* 535 N.W.2d at 262.

■ The clear import of *Woods,* therefore, is that administrative/regulatory searches in the parole/probation context need only, as a matter of Michigan law, be based on reasonable suspicion supported by articulable facts. Accordingly, relying on *Woods* and *Hellenthal,* the Court finds that the searches here are consistent with Michigan law to the extent that they comply with the underlying regulation, Michigan Administrative Code § R. 791.7735.

### 3. The Search Was Consistent with Michigan Law.

The Government contends that Michigan Administrative Code § R 791 .7735 authorized the instant search. Defendant, however, relying on a Michigan Department of Corrections Policy directive, argues that the search was inconsistent with the relevant regulations.

Michigan Administrative Code § R. 791.7735 provides:

(1) A parole agent may conduct a warrantless search of a parolee's person or property under any of the following circumstances:

  (a) Incident to a lawful arrest pursuant to section 39 of Act No. 232 of the Public Acts of 1953, as amended, being § 791.239 of the Michigan Compiled Laws.

  (b) A stop and frisk, if there is reasonable cause to believe that the parolee is presently involved in criminal conduct, has violated a condition of parole, or is carrying a weapon.

  (c) Seizure of evidence or contraband in plain view.

  (d) With the consent of the parolee or a third party having mutual control over the property to be. searched.

(2) Where none of the circumstances specified in subrule (1) of this rule are present and there is a reasonable cause to believe that a violation of parole exists, a parole agent may conduct a search of a parolee's person or property if, as soon as possible thereafter, the parole agent files a written report[2]

with his or her supervisor setting forth the specific reasons for the search, describing the location or place searched, and describing the specific items seized.

Michigan Administrative Code § R. 791.7735.

The instant search is justified under both subrules (1) and (2) of § R. 791.7735. Section (1)(a) provides that a parole agent may conduct a warrantless search of a parolee's person or property incident to a lawful arrest as described in § 791.239. Section 791.239, in turn, provides that a parole officer may arrest a parole violator without a warrant if the officer has reasonable grounds to believe the prisoner has violated his or her parole.[3] Thus, read in conjunction with one another, these two sections indicate that a parole officer, with reasonable grounds to believe a parolee has violated his or her parole, may arrest the violator without a warrant and subsequently conduct a warrantless search of the parolees property. In this case, as the parole officer indicated at the hearing, he had a "multitude" of reasons to arrest Mr. Carnes, including Mr. Carnes' failure to report to his parole officer on January 13, 1997; his apparent residency violation; and the information that he had apparently illegally entered his girlfriend's house and assaulted her. The information was sufficient to give Parole Officer Mytinger reasonable grounds to believe Mr. Carnes violated his parole, and, therefore, the statutory power to arrest him under § 791.239. Having made this lawful arrest, Mr. Mytinger was entitled to thoroughly search the house as he did, despite not having a search warrant, pursuant to § 791.7735(1)(a).[4]

---

2. It is undisputed that Parole Officer Michaelson filed the necessary report under § R. 791.7735.

3. Section 791.239 states in full:

A probation officer, a parole officer, a peace officer of this state, or an employee of the department other than a probation or parole officer who is authorized by the director to arrest parole violators may arrest without a warrant and detain in any jail of this state a paroled prisoner, if the probation officer, parole officer, peace officer, or authorized departmental employee has reasonable grounds to believe that the prisoner has violated parole or a warrant has been issued for his or her return under section 38.

4. Defendant argues that, because he was arrested outside the house, the parole officer did not have probable cause to search inside the house. (Citing *United States v. Savoca,* 761 F.2d 292, 297 (6th Cir.1985)("The fact that there is probable cause to arrest a person for a crime does not automatically give the police probable cause to search his residence or other area in which he has been observed for evidence of that crime.")). But the restrictions generally imposed on a search incident to an arrest, such as the wingspan limitation in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)(arresting officer may search person arrested, in order to remove any weapons and to seize evidence on arrestee's person, and area into which arrestee

Second, the Government contends that the search of 1731 Harmon was permissible because the parole officers had police surveillance information which indicated that Defendant was not living at his sister's Moravian Road residence as his parole required, but rather, that he was residing at 1731 Harmon.[5]

In an attempt to circumvent the Government's argument, Defendant argues that the parole officers wanted him "as an 'absconder' and for no other reason." In this vein, Defendant refers the Court to Michigan Department of Corrections Policy Directive number 06.01.130, Subject Absconder Recovery Unit, which provides:

I. POLICY STATEMENT: To establish a policy on the investigation, location and arrest of prison escapes, Community Residential Programs (CRP) escapes and parole absconders by the Absconder Recovery Units.

II. POLICY:

A: Absconder Recovery Units (ARU) are responsible for the investigation and location of escapees and parole absconders. While Unit members are authorized by the Director to arrest escapees and parole violators without a warrant, arrest is the primary responsibility of police agencies and ARU members may assist.

F: During the course of surveillance, investigation and arrest, ARU members shall not violate any laws or traffic ordinances. Searches of residences or other buildings will be conducted only with the permission of the building owner, manager, or lessee as appropriate. If permission is denied a search warrant *must* be requested. Any search conducted pursuant to a search warrant shall be conducted by authorized police officers.

(MS, Attachment II, p. 1) (*emphasis* in the original).

The Court finds this policy directive unhelpful for 2 reasons. First, this directive on its face applies only to Absconder Recovery Units. Its applicability to parole officers is not apparent. Second, and more importantly, the Government is not arguing that the parole officers here searched the house incident to the absconder warrant. Rather, it is arguing that the parole officers searched 1731 Harmon to confirm their belief that Defendant was residing there and not at Moravian Road.

Although not raised by Defendant, the real question regarding § R. 791.7735(2) is whether the parole officers had reasonable cause to believe that Defendant was violating his parole. On this point, the Government argues that the surveillance information from the police provided them with reasonable cause.

The Court has not found a single state court decision which interprets § R. 791.7735(2). Thus, the Court is left to construe the "reasonable cause" phrase in § R. 791.7735(2) as a matter of first impression. The only relevant authority seems to be the *Woods* decision. Here, the Michigan Court of Appeals analogized a prisoner in a Community Residential Program ("CRP") to a probationer or a parolee and then found that a warrantless search of his residence was permissible, provided that the Department of Corrections officer had a reasonable suspicion supported by articulable facts which made the officer believe that the prisoner was in engaged in criminal conduct or had violated the CRP rules.

■ On its face, the "reasonable cause" language in the Rule clearly indicates a lower standard than probable cause, but one that is higher than mere suspicion. The standard utilized by the *Woods* Court is carefully tailored to meet this level of probability and suspicion in a context that is highly analogous to the instant matter. Therefore, the Court interprets the "reasonable cause" lan-

---

might reach in order to grab weapon or evidentiary items), do not apply in this case because the search was conducted pursuant to a constitutionally valid regulation, as in *Griffin*.

5. Defendant has not argued in his pleadings before this Court that this residence was not his. Thus, the Court assumes that this residence was Defendant's—i.e., the "parolee's property." *See* Michigan Administrative Code § R. 791.7735.

guage in the Rule to be a reasonable suspicion supported by articulable facts.

In the instant matter, the parole officers had surveillance information from the Troy and Auburn Hills Police Departments which indicated that over a 3 week period Defendant was coming and going from 1731 Harmon; leaving his car there overnight; and spending very little, if any, time at the Moravian Road residence where he was required to reside by the terms of his parole. This evidence certainly made it likely that Defendant was residing at 1731 Harmon. Therefore, the Court concludes that the parole officers had reasonable cause—a reasonable suspicion based on articulable facts—to believe that Defendant was violating his parole by residing at 1731 Harmon. Accordingly, the Court finds that the search here complied with Michigan Administrative Code § R. 791.7735.

## B. *The Griffin Decision and Its Progeny.*

Having dispensed with Defendant's arguments as a matter of Michigan law, the Court will now turn directly to the Fourth Amendment. On this point, the Government argues that the search here is consistent with the Fourth Amendment by virtue of the Supreme Court's decision in *Griffin, supra,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709. Defendant, however, contends that the instant search is beyond the scope of *Griffin.*

In *Griffin,* the petitioner, a previously convicted felon, was placed on probation after a Wisconsin state court convicted him of resisting arrest, disorderly conduct, and obstructing an officer. 483 U.S. at 870, 107 S.Ct. at 3167. Under Wisconsin law, a probationer is subject to various rules and regulations, including the following:

> [A]ny probation officer [may] search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband—including any item that the probationer cannot possess under the probation conditions.

*Griffin, supra,* 483 U.S. at 870–71, 107 S.Ct. at 3167.

While the petitioner was on probation, his probation officer's supervisor learned from a police detective that there may be firearms in the petitioner's apartment. Thereafter, the supervisor and three plainclothes policemen went to the apartment, and with the petitioner's consent, conducted a search that recovered a handgun. *Id.* at 871, 107 S.Ct. at 3167.

The Supreme Court began its analysis by noting that, "[a]lthough we usually require that a search be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be), we have permitted exceptions when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Griffin, supra,* 483 U.S. at 873, 107 S.Ct. at 3168. Moreover, the Court observed that "[w]e have also held, for similar reasons, that in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet 'reasonable legislative or administrative standards.'" *Id.*

Relying on this precedent, the Court found that "[a] State's operation of a probation system, like its operation of a school, a government office or prison, or its supervision of a regulated industry, presents 'special needs,'" namely a form of incarceration and supervision that serves as a period of "genuine rehabilitation" and permits the probationer to be at large without harming the community or otherwise putting it at risk. *Id.,* 483 U.S. at 874–75, 107 S.Ct. at 3168–69.

Next, taking the "regulation as it has been interpreted by state corrections officials and state courts" to fix its meaning, the Court noted that the Wisconsin Supreme Court had held that reasonable grounds for searching a probationer's home included a tip from a police detective that the probationer had or may have had an illegal weapon in his home. Then, the Court proceeded to determine whether the special needs of Wisconsin's probation system justified this regulation. *Id.* at 875, 107 S.Ct. at 3169. Here, the Court found that the regulation permissibly dis-

pensed with the warrant requirement for 3 reasons:

> (1) "A warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires;"
>
> (2) "[T]he delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct;" and
>
> (3) This delay "would reduce the deterrent effect that the possibility of expeditious searches would otherwise create."

*Id.* at 876, 107 S.Ct. at 3170; *See also, Id.* at 3171 ("it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts"). Therefore, the Court concluded that the search satisfied the demands of the Fourth Amendment because it was reasonable for the state to have a regulation that permitted a warrantless search of a probationer's home where the probation officer had reasonable grounds—a tip from the police—to believe that the probationer was violating a condition of his parole. *Griffin,* 483 U.S. at 876–86, 107 S.Ct. at 3169–72.[6]

Since *Griffin,* courts have seamlessly applied its logic to cases involving parole. *See, e.g., United States v. Lewis,* 71 F.3d 358, 361 (10th Cir.1995); *United States v. Cardona,* 903 F.2d 60 (1st Cir.1990), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991); *People v. Woods,* 211 Mich.App. 314, 316, 535 N.W.2d 259, 261 (1995). Indeed, the *Griffin* Court itself noted the parallels be-

tween parole and probation. 483 U.S. at 874, 107 S.Ct. at 3169.

### C. *Applying Griffin to this Matter.*

■ The Government contends that the search of 1731 Harmon was constitutional under *Griffin* because the officers acted under a statute identical in relevant aspects to the statute at issue in *Griffin* and because the parole officers had reasonable cause to believe that Defendant had violated a condition of his parole. To apply *Griffin* to the instant search, the Court must examine: (1) whether the special needs of the Michigan parole system justify replacement of the probable cause standard with a lesser regulatory standard; and (2) whether the regulation is reasonable under the Fourth Amendment.

#### 1. *Special Needs.*

In *Griffin,* the Supreme Court found that probation officers could, based on reasonable grounds (a tip from the police), search the defendant's house without a warrant to determine whether he was in violation of his parole conditions. The Court reasoned that this was within the administrative/regulatory special needs exception to the Fourth Amendment's warrant requirement because:

> (1) "A warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires;"
>
> (2) "[T]he delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct;" and

---

**6.** It is important to note how the Court distinguished this holding from that which the Wisconsin Supreme Court reached:

> We think the Wisconsin Supreme Court correctly concluded that this warrantless search did not violate the Fourth Amendment. To reach that result, however, we find it unnecessary to embrace a new principle of law, as the Wisconsin court evidently did, that any search of a probationer's home by a probation officer satisfies the Fourth Amendment as long as the information possessed by the officer satisfies a federal "reasonable grounds" standard. As his

sentence for the commission of a crime, [the defendant] was committed to the legal custody of the Wisconsin State Department of Health and Social Services, and thereby made subject to that Department's rules and regulations. The search of [the defendant's home] satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles.

*Griffin, supra,* 483 U.S. at 872–73, 107 S.Ct. at 3168.

(3) This delay "would reduce the deterrent effect that the possibility of expeditious searches would otherwise create."

*Id.* at 876, 107 S.Ct. at 3170; *See also, Id.* at 878–79, 107 S.Ct. at 3171 ("it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts").

As other courts have noted, these reasons apply with equal force to a state's parole system because both probation and parole involve considerations of rehabilitation, supervision, and community safety and require deterrence, quick response to violations, and a close officer—defendant relationship. *See, e.g., Lewis, supra,* 71 F.3d at 361; *Cardona, supra,* 903 F.2d 60; *Woods, supra,* 535 N.W.2d at 261; *See also, Griffin,* 483 U.S. at 874, 107 S.Ct. at 3169.

Nevertheless, Defendant attempts to distinguish *Griffin* because the parole officers here had no reason to believe that any contraband or fruits of a crime would be found at 1731 Harmon. This argument, however, is a red herring. Nothing in *Griffin* limits its holding to searches for contraband or firearms only. Instead, *Griffin* recognizes that in the parole/probation context the warrant requirement must give way to warrantless searches based on reasonable regulations because of the special needs of the parole/probation system. Thus, whether the impetus is to search for possession of a firearm or habitation of a residence, the special needs exception will still apply provided that the search is incident to a parole/probation violation.

### 2. *Reasonableness of the Regulation.*

In *Griffin,* the Wisconsin regulation at issue provided that: "[A]ny probation officer [may] search a probationer's home without a warrant as long as his supervisor approves and as long as there are *'reasonable grounds'* to believe the presence of contraband—including any item that the probationer cannot possess under the probation condi-

tions." *Griffin, supra,* 483 U.S. at 870–71, 107 S.Ct. at 3167 (*emphasis* added). The Supreme Court held that this regulation was permissible under the Fourth Amendment because the Court found it reasonable to permit a probation officer to search a probationer's residence for evidence of probation violations where the probation officer had received a tip from a police detective which suggested that the probationer was in violation of his probation conditions.

In applying *Griffin* to the instant matter, the Court finds the Ninth Circuit's decision in *United States v. Watts,* 67 F.3d 790 (9th Cir.1995) to be instructive. Here, the Court described the situation as follows:

> [a]lthough California's probationers are subject to a condition authorizing warrantless searches of their property, [the probation officer] was well aware that some probationers would lie to their probation officers about where they were living so they could continue to engage in criminal activity without being hindered by probation searches. [The probation officer] had begun to suspect that [the defendant] was one such probationer, telling [the probation officer] that he lived with his mother on Florinda Way while he continued his criminal activity undetected at another residence.

*Watts,* 67 F.3d at 792.

Thereafter, the probation officer received a tip from a "confidential reliable informant" and surveillance information from the police, who were investigating the defendant for cocaine-trafficking, which indicated that the defendant was living in a different residence with a woman and her children. *Id.* at 793–95. Eventually, the probation officer ordered the police to search the other residence to confirm his belief that Defendant was residing there. *Watts, supra,* 67 F.3d at 793–95.

On appeal, the Ninth Circuit affirmed the District Court's finding that the parole officer was sufficiently in control of the search so as not to be a "stalking horse"[7] and it

---

7. Although not raised by Defendant, the Government argues, and the Court agrees, that this is not a "stalking horse" case. A parole officer acts

as a stalking horse if he or she conducts a parole search on the prior request of and in concert with law enforcement officers to enable the law

held that the search of the house was permissible because "probation searches conducted pursuant to state law satisfy the Fourth Amendment's reasonableness requirement." *Watts, supra,* 67 F.3d at 793 (citing *Griffin, supra,* 483 U.S. at 872–80, 107 S.Ct. at 3167–72).

■ The circumstances here are virtually identical to *Watts, supra;* 67 F.3d at 793–95. The parole officers, based on police surveillance, believed that Defendant was violating his parole by living at another residence. Therefore, pursuant to § R. 791.7735, the parole officers conducted a search of the residence to confirm their belief. Under *Watts,* these circumstances plainly meet the reasonableness test of the Fourth Amendment in the probation/parole context. *See also, United States v. Martin,* 25 F.3d 293, 296 (6th Cir.1994) (A probation officer may search a probationer's car without a warrant where she has been arrested for drug trafficking because "[a] probation officer need not have a warrant to conduct a search of a probationer where the probation officer is properly carrying out her official responsibilities").

Put simply, there was abundant evidence that Defendant was violating his parole conditions and the parole officers searched his residence without a warrant to confirm the violation. This scenario is well-within what the Court contemplated in *Griffin* and, therefore, this search and § R. 791.7735 are reasonable under the Fourth Amendment.

### IV. *CONCLUSION*

For the foregoing reasons, Defendant's Motion to Suppress is hereby DENIED.

enforcement officers to evade the Fourth Amendment warrant requirement. *Martin, supra,* 25 F.3d at 296; *United States v. Watts,* 67 F.3d 790, 794 (9th Cir.1995). In such instances, the search is impermissible because it is a mere subterfuge for a criminal investigation. *Martin,* 25 F.3d at 296. Nevertheless, police officers and parole officers "can work together and share information to achieve their objectives." *Id.*

Here, the parole officers conducted this search to determine if Defendant was violating his parole. Although the Auburn Hills Police assisted in this search, it is clear that their investigation of Defendant, which was limited to the illegal entry and the assault and battery, would not be (and was not) served or advanced by a search of his residence, as there would be no fruits or contraband from this crime.