**UNITED STATES of America,
Plaintiff,**

v.

**William Luke CARNES, Defendant.**

No. 97–80053.

United States District Court,
E.D. Michigan,
Southern Division.

June 17, 1999.

**830**

Mark Osler, Assistant United States Attorney, Detroit, MI, for plaintiff.

Richard Amberg, Waterford, MI, for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS TAPES

ROSEN, District Judge.

### I. *INTRODUCTION*

This case is presently before the Court on a March 9, 1999 Motion to Suppress Tapes filed by Defendant, William Luke Carnes, who is charged in a four-count Second Superceding Indictment with: (1) Felon in Possession of a Firearm; (2) Felon in Possession of Ammunition; (3) Interception of Wire Communication; and (4) Tampering with a Witness. On January 14, 1997, parole officers and Auburn Hills police arrested Defendant at 1731 Harmon Road in Auburn Hills, Michigan. Subsequent to the arrest, the authorities, who suspected that Defendant was violating the terms of his parole by living at an address other than that provided to his parole officer, conducted a warrantless search of 1731 Harmon, seizing, among other items, a firearm, ammunition, and the audio tapes currently in dispute.

In a previous published opinion, *United States v. Carnes*, 987 F.Supp. 551 (E.D.Mich.1997), this Court ruled on the validity of the warrantless search, finding it consistent with Michigan law and constitutional under the special needs exception to the warrant requirement outlined by the Supreme Court in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Defendant now challenges the seizure of tapes during the warrantless search, arguing that the officers exceeded the scope of the special needs exception by seizing items that were neither incriminating on their face nor evidence of the suspected parole violation.

The Court held a hearing with respect to Defendant's Motion on April 15, 1999. Having heard the oral arguments of counsel, and having reviewed the briefs and supporting documents submitted by the parties, the Court is now prepared to rule on Defendant's Motion. This Opinion and Order sets forth the Court's ruling.

### II. *FACTUAL AND PROCEDURAL BACKGROUND*

#### A. *The Seizure of the Tapes*

On January 14, 1997, parole officers and Auburn Hills policed arrested Defendant at 1731 Harmon while he was attempting to flee out a window.[1] Subsequent to apprehending Defendant, the authorities searched the residence without a warrant, finding several audio cassettes which Defendant now seeks to suppress. According to the Government, the authorities found the tapes inside a briefcase containing documents and other objects that the officers believed linked Defendant to the residence.

Sometime thereafter, the parole officers transferred custody of the tapes to Assistant United States Attorney ("AUSA") Mark Osler, who listened to the cassettes and determined that they contained recorded phone conversations between a woman named Lisa Kellum, a former girlfriend of Defendant and potential prosecution witness, and other individuals.[2] On

1. For the purposes of the instant motion, the Court sees no reason to reiterate the facts and circumstances leading up to Defendant's January 14, 1997 arrest, which were well documented in the Court's December 8, 1997

Opinion and Order. *See, Carnes*, 987 F.Supp. at 552–553.

2. Michigan parole authorities apparently did not rely on the tapes in prosecuting Defendant for violating the terms of his parole.

June 17, 1997, Ms. Kellum testified under subpoena before the Grand Jury that the tapes were of her calls, and that she had not granted Defendant permission to make the recordings. Authorities subsequently found a recording device under Ms. Kellum's home, containing a tape similar to those seized from 1731 Harmon.

## B. *The Court's December 8, 1997 Opinion and Order*

As noted above, Defendant previously filed a Motion to Suppress challenging the constitutionality of the warrantless search of 1731 Harmon. The Court considered and rejected Defendant's challenge, finding the search consistent with Michigan law and constitutional under the special needs exception to the warrant requirement. In rendering its decision, the Court cited in full Michigan Administrative Code § R 791.7735, which provides:

(1) A parole agent may conduct a warrantless search of a parolee's person or property under any of the following circumstances:

(a) Incident to a lawful arrest pursuant to section 39 of Act No. 232 of the Public Acts of 1953, as amended being § 791.239 of the Michigan Compiled Laws.[3]

(b) A stop and frisk, if there is reasonable cause to believe that the parolee is presently involved in criminal conduct, has violated a condition of parole, or is carrying a weapon.

(c) Seizure of evidence or contraband in plain view.

(d) With the consent of the parolee or a third party having mutual control over the property to be searched.

---

**3.** M.C.L. § 791.239 provides:

A probation officer, a parole officer, a peace officer of this state, or an employee of the department other than a probation or parole officer who is authorized by the director to arrest parole violators may arrest without a warrant and detain in any jail of this state a paroled prisoner, if the probation officer, parole officer, peace officer, or authorized departmental employee has *rea-*

(2) Where none of the circumstances specified in subrule (1) of this rule are present and there is a *reasonable cause to believe that a violation of parole exists,* a parole agent may conduct a search of a parolee's person or property if, as soon as possible thereafter, the parole agent files a written report with his or her supervisor setting forth the specific reasons for the search, describing the location or place searched, and describing the specific items seized.

(emphasis added).[4]

In addition to finding that Michigan's regulatory scheme satisfied the Fourth Amendment reasonableness requirement, *Carnes,* 987 F.Supp. at 562, the Court also found the warrantless search of 1731 Harmon justified under both subrules (1)(a) and (2) of § R. 791.7735. *Id.* at 557. With respect to subrule (1)(a), the Court indicated that the parole officers had reasonable grounds to believe that Defendant had violated his parole and, thus, the statutory power to arrest Defendant under M.C.L. § 791.239. Therefore, the warrantless search of 1731 Harmon was valid under subrule (1)(a) as a search incident to a lawful arrest. With respect to subrule (2), the Court similarly found that a warrantless search was justified because the parole officers had a reasonable suspicion supported by articulable facts that Defendant was violating his parole.

## C. *The Instant Motion*

In his instant Motion to Suppress, Defendant now asks the Court to go beyond its initial ruling to consider the somewhat novel question of the permissible scope of

*sonable grounds to believe that the prisoner has violated parole* or a warrant has been issued for his or her return under section 38.
(emphasis added).

**4.** For purposes of subrule (2), the Court defined "reasonable cause" as "a reasonable suspicion supported by articulable facts." *Carnes,* 987 F.Supp. at 559.

a warrantless search of a parolee's residence under the special needs exception to the warrant requirement. More specifically, Defendant contends that the authorities conducted an illegal general search in violation of the Fourth Amendment by seizing tapes which he alleges were neither facially incriminating nor evidence that the seizing officers could reasonably believe would link him to residency at 1731 Harmon.[5] In response, the Government argues that Defendant did not have a legitimate expectation of privacy in the product of an illegal wiretap, and that even if he did have an expectation of privacy in the tapes, that the parole officers could reasonably believe that the tapes would provide evidence of Defendant's suspected parole violation.

## III. ANALYSIS

Although the law is now well established that in some instances the special needs of a state parole system justify warrantless searches of a parolee's residence based on less than probable cause, the Supreme Court has not clearly delineated the permissible scope of a search under the special needs exception.[6] At one end of the spectrum, it could be argued that so long as a state statutory/regulatory scheme satisfies the Fourth Amendment reasonableness requirement, and parole officers comply with the state scheme in conducting warrantless searches of parolees' homes, there are no limitations placed on the items that parole officers can seize in conducting a search. After all, the Supreme Court has long recognized that parolees do not enjoy the full panoply of rights applicable to other citizens who have not been

convicted of a crime. *See, Griffin,* 483 U.S. at 874, 107 S.Ct. at 3169 ("[parolees] do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [parole] restrictions.' ") (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

On the other hand, the Court could adopt the position urged by Defendant that parole officers do not possess unfettered authority to conduct general searches of a parolee's residence. More specifically, Defendant argues that parolees retain some privacy rights and, thus, the Fourth Amendment limits parole officers to seizing two classes of items: (1) items whose criminal nature is readily apparent (e.g., a firearm); and (2) items that the officer could reasonably believe constitute evidence of a suspected parole violation.

■ Having carefully considered the issue, the Court finds Defendant's proposed constitutional standard with respect to the items a parole officers may seize in the course of a warrantless search more consistent with the Fourth Amendment prohibition against unreasonable searches and seizures. However, the Court declines to accept Defendant's overly narrow view of what constitutes suspicious evidence. Although parolees must accept a diminished expectation of privacy given their status as individuals still under a term of imprisonment, parole officers do not have carte blanche to seize any and all

---

**5.** Defendant's Motion also alleges that the parole officers acted as a "stalking horse" for the police to evade the Fourth Amendment warrant requirement. The Court has previously addressed this issue, finding that the probation officers were sufficiently in control of the search to defeat a stalking horse claim. *Carnes,* 987 F.Supp. at 561 n. 7.

**6.** In *Griffin,* 483 U.S. at 880, 107 S.Ct. at 3172, the Supreme Court declined to reach the issue of the scope of a warrantless search under the special needs exception:

> The search of Griffin's residence was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers. This conclusion makes it unnecessary to consider whether, as the court below held and the State urges, any search of a probationer's home by a probation officer is lawful when there are 'reasonable grounds' to believe contraband is present.

items found during the course of a warrantless search, no matter how innocuous the item appears, or how tangentially related the item is to a suspected parole violation. *See, Morrissey,* 408 U.S. at 482, 484, 92 S.Ct. at 2601–2602 (finding that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty," and that society has an interest in treating parolees with "basic fairness."). Accordingly, the Court finds that in conducting the warrantless search of 1731 Harmon, the parole officers in the instant case were limited to seizing items: (1) that were facially criminal; or (2) that the officers could reasonably believe constitute either direct or corroborative evidence of the suspected parole violation. The Court wishes to emphasize, however, that these limitations must be read in conjunction with the broad discretion generally afforded parole officers in supervising the reintegration of parolees into society. *See, Morrissey,* 408 U.S. at 479, 92 S.Ct. at 2599.

Applying the aforementioned standard to the case at bar, Defendant argues that the parole officers in the instant case lacked even a reasonable suspicion to believe that the tapes constituted contraband or evidence of improper residency and, as such, the Court must suppress the tapes as the fruit of an unlawful general search in violation of the Fourth Amendment. In support of this argument, Defendant notes that the tapes were facially innocuous, and that parole officers did not rely on the tapes in prosecuting Defendant for his parole violation. Moreover, Defendant points out that the Government did not even realize until long after the seizure that the tapes contained evidence of a crime. Because the tapes were seized as part of an illegal general search, Defendant argues that AUSA Osler was required to obtain a warrant prior to listening to the contents.

■ While the Court recognizes that standard issue audio cassettes are not criminal on their face—tapes could just as likely contain music or other innocent information as illegally recorded phone conversations—the Court profoundly disagrees with Defendant's assertion that a parole officer could not reasonably suspect that audio cassettes found in a briefcase with papers and other documents might constitute evidence that Defendant was living at an address in violation of his parole conditions. Individuals frequently use audio cassettes to record personal thoughts and information, and it is reasonable for a parole officer to believe an owner would want to keep tapes, and other objects of a similarly personal nature, at his place of residence.

Moreover, the fact that a significant period of time elapsed before AUSA Osler listened to the tapes does not support Defendant's argument.[7] The relevant inquiry is not when the authorities listened to the tapes, but rather whether the seizing officer could reasonably believe that the item constituted evidence of a suspected parole violation—in this case, evidence establishing that Defendant was violating his parole by residing at an address other than that provided to his parole officer. In the present case, the parole officers could reasonably believe that the tapes would provide either direct or corroborative evidence linking Defendant to 1731 Harmon, and having found that the parole officers lawfully seized the tapes, the Court is aware of no authority which requires any government agent in the subsequent chain of custody to obtain a warrant to listen to the contents. As such, the Court finds Defendant's Motion to Suppress Tapes without merit.

---

7. The Court is not in a position to speculate why the parole officers did not listen to the tapes before passing the tapes on to AUSA Osler. Although Defendant claims that the parole officers did not consider the tapes evidence linking Defendant to 1731 Harmon, it is just as likely that the officers already had enough evidence to substantiate the suspected parole violation.

## IV. *CONCLUSION*

For all of the aforementioned reasons:

IT IS HEREBY ORDERED that Defendant's Motion to Suppress Tapes is DENIED.