PEOPLE v WOODS

Docket No. 170752. Submitted March 23, 1995, at Detroit. Decided
June 2, 1995, at 9:20 A.M.

Robert J. Woods pleaded guilty in the Alpena Circuit Court, John
F. Kowalski, J., of breaking a safe and breaking and entering
with intent to commit larceny. At the time of the offenses, the
defendant was supposed to be a prisoner in the custody of the
Department of Corrections, serving a sentence at his home
while monitored by electronic tether. However, after it was
discovered that the tether had been tampered with, the defendant was placed on escape status. The defendant appealed.

The Court of Appeals *held:*

The trial court did not err in denying the defendant's motion
for suppression of evidence seized in a search of his home
conducted by a field officer of the Department of Corrections
without a warrant and in a subsequent search of his garage
and automobile conducted by police officers with a warrant.

1. The defendant inmate was granted special status that
permitted him to serve the balance of his sentence in his own
home. Accordingly, the reasonableness of the search must be
renewed pursuant to Fourth Amendment standards. The search
of the defendant's home did not violate the Fourth Amendment
because it was reasonable. The field officer had a reasonable
suspicion that the defendant had engaged in criminal conduct
and violated rules governing his confinement. Policy directives
of the Department of Corrections, in effect at the time of the
defendant's offenses, allowed field officers to conduct administrative searches of an inmate's living area and vehicles.

2. The affidavit for the search warrant for the defendant's
garage and automobile provided probable cause for a search.
The fact that the search warrant bore a wrong address for the
defendant's home did not make the warrant invalid. The issuing magistrate verbally approved correction of the address on
the warrant.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *Dennis P. Grenkowicz,*

Prosecuting Attorney, and *Dennis J. Pheney, Jr.,* Assistant Prosecuting Attorney, for the people.

*Daniel J. Rust,* for the defendant on appeal.

Before: CONNOR, P.J., and WAHLS and HOEKSTRA, JJ.

CONNOR, P.J. Defendant pleaded guilty of breaking a safe, MCL 750.531; MSA 28.799, and breaking and entering a building with intent to commit larceny, MCL 750.110; MSA 28.305. In exchange for the plea, the prosecutor agreed not to bring any criminal charges against defendant regarding a paternity action. There was also a sentence agreement. The trial court sentenced defendant to prison for six to fifteen years, and six to ten years, respectively. Defendant's plea was conditional, because he reserved the right to appeal all issues raised in the trial court. Defendant now appeals as of right. We affirm.

Defendant admitted that on January 10, 1993, he broke into the Center Building in Alpena, with the intent to commit larceny. He also admitted breaking a safe. At the time defendant committed these offenses, he was considered a prisoner within the jurisdiction of the Michigan Department of Corrections. MCL 791.265g(e); MSA 28.2325(7)(e). Defendant had not yet been released on parole, but was serving his time in his own residence and was monitored on an electronic tether. Defendant's placement in his own home was part of the Community Residential Program (CRP). However, Alpena County does not have any community residential facilities, so prisoners like defendant who are permitted to serve their time in the CRP, live in their own residence and are monitored electronically.

After the breaking and entering was discovered, the police were notified that during the period when the crime was thought to have occurred, defendant was reported through the Law Enforcement Information Network as being on escape status. This gave officers the right to arrest defendant as though a bench warrant had been issued. The police also suspected defendant was the perpetrator because the crime fit his *modus operandi* of past breakings and enterings.

Officers conducted two searches, both of which defendant claims were unconstitutional. The first was conducted by defendant's assigned field officer with the Department of Corrections, along with two Alpena police officers. This search was considered an administrative search of defendant's residence, authorized by Department of Corrections rule OP-BFS-30.05, which is based on Policy Directive 04.04.110. The field officer determined that defendant's tether was damaged and had been tampered with. In addition, officers determined that the tires on defendant's car left approximately the same size tracks as those found at the crime scene. Defendant did not allow officers to search his attached garage. The second search was conducted after officers obtained a search warrant for defendant's car and garage. The police recovered the missing safe from defendant's garage.

We find the trial court did not err in denying defendant's motion to suppress evidence of the two searches.

### ADMINISTRATIVE SEARCH OF DEFENDANT'S RESIDENCE

The administrative search of defendant's residence by his field officer was proper. The issue is whether the search conducted pursuant to admin-

istrative regulations of the Department of Corrections falls within an exception to the Fourth Amendment's requirement that searches be conducted pursuant to warrants and be based on probable cause. The exception to the warrant requirement relied upon here involves the governmental "special needs" or regulatory exception. A warrant or probable cause will not be required in such cases as long as the searches meet "reasonable legislative or administrative standards." *Griffin v Wisconsin,* 483 US 868, 873; 107 S Ct 3164; 97 L Ed 2d 709 (1987). A search that is conducted pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement complies with the Fourth Amendment. *Id.* at 873.

In *Griffin,* the Supreme Court held that a search without a warrant of a probationer's home was proper because it was conducted pursuant to a regulation that permitted such searches where there were reasonable grounds to believe that the probationer was in possession of contraband. *Id.* at 871-873. *Griffin* has been interpreted as creating a special needs exception for searches of probationers' and parolees' residences. *United States v Cardona,* 903 F2d 60, 62-63 (CA 1, 1990).

Department of Corrections rule OP-BFS-30.05 permits field service staff members to conduct warrantless administrative searches of a prisoner's clothed body, living area, or vehicle in order to prevent contraband from being introduced into CRP facilities. Pursuant to Policy Directive 04.04.110, prisoners' cells or rooms may be searched as part of the department's responsibility to maintain order and security within a prison facility. Subparagraph 5 provides "[a] prisoner's possessions, living area and work area are subject to search at any

time, with or without suspicion that contraband is present."[1]

We believe that a prisoner, who is released from a state penal institution and placed in his own home to serve the balance of his sentence, is afforded a special status that is analogous to that of a probationer or a parolee. However, even a probationer or parolee is entitled to some limited protection of their privacy interest.[2] *Griffin, supra,* at 875. Accordingly, under the circumstances of the present case, where defendant inmate was residing in his own home, we find that the reasonableness of the search must be reviewed under standards applied pursuant to the Fourth Amendment.

Utilizing Fourth Amendment standards, we find that the administrative search of defendant's home was reasonable. Michigan Department of Corrections policy directives, in place at the time

[1] Further authority for the right to search is found at 1989 AACS, R 791.2210, which provides that searches shall be conducted for the following purposes: to maintain security, to preserve order and discipline, and to ensure the safety of the facility.

[2] In light of defendant's status as a prisoner within the CRP, an argument can be made that his expectation of privacy is even less than that of a probationer or parolee. However, we believe that placement in the CRP should be found to be analogous to parole; in both situations, the prisoner has demonstrated, through his behavior, that he is not required to remain in prison. The California Court of Appeals offered a thorough explanation of the rationale for parole searches in *People v Williams,* 3 Cal App 4th 1100; 5 Cal Rptr 2d 59 (1992). The *Williams* Court held that parole searches without warrants should be directly and closely related to parole supervision in order to avoid an unreasonable invasion of the parolee's privacy interests. *Id.* at 1108. Further, California courts have ruled that the search without a warrant of a parolee's home, pursuant to a condition of parole, is reasonable under the Fourth Amendment "if there is a reasonable nexus (a direct and close relationship) between the search and the parole process, and a reasonable suspicion, based on articulable facts, that the parolee has violated the terms of his parole or engaged in criminal activity." *People v Johnson,* 47 Cal 3d 576, 594; 253 Cal Rptr 710; 764 P2d 1087 (1988). However, there is no clear rule in this area. See 59 Am Jur 2d, Pardon and Parole, § 94, p 94. See also *Latta v Fitzharris,* 521 F2d 246, 250 (CA 9, 1975).

defendant committed the offenses, provided for searches of an inmate's living area and vehicles by field service staff members. Defendant was on escape status at the time the crimes were committed and the crimes fit his *modus operandi* of past offenses. Moreover, a plain view observation of defendant's car revealed that the rear tire tracks were very similar to those left at the crime scene, with one tire being noticably wider than the other. In sum, defendant's field officer had a reasonable suspicion that defendant was engaged in criminal conduct or had violated the CRP's rules. Therefore, the officer was justified in conducting a search of his residence, pursuant to Department of Corrections rules and regulations.

### SEARCH CONDUCTED PURSUANT TO SEARCH WARRANT

With respect to defendant's claim that the search conducted pursuant to a search warrant was invalid, we disagree.

We find the affidavit submitted for the search warrant supports the conclusion that there was probable cause to search defendant's garage and car. *People v Russo,* 439 Mich 584, 603-604; 487 NW2d 698 (1992); *People v Stumpf,* 196 Mich App 218, 227; 492 NW2d 795 (1992). The police had information that linked defendant to the breaking and entering. The crime was committed about the time defendant was reported to be off his tether. The way the crime was committed matched defendant's *modus operandi.* The tire tracks matched the tires on defendant's car. Moreover, defendant's refusal to allow a search of the garage was further indication that evidence of the crime could be found there. Consequently, the magistrate properly issued the warrant on the basis of probable cause. *Russo, supra* at 602-603.

Defendant's claim that the affidavit and search warrant were defective is unpersuasive. The police originally obtained from a magistrate a warrant for "3038 Washington Street." However, when police arrived to execute the warrant, they discovered they had the wrong street on the affidavit and warrant. Defendant actually lived on State Street, which intersects Washington Street near or at defendant's residence. The magistrate verbally approved the corrections to be made to the warrant and explained that the wrong street name did not invalidate the warrant. The warrant included a detailed physical description of the building to be searched.

The magistrate correctly ruled that the warrant was valid. The police officers were only uncertain about which of the intersecting streets defendant's residence faced. The police attempted to correct the error once it was discovered, and the magistrate was aware of it. Under the circumstances, the warrant was not defective simply because the street name was incorrect. *People v Westra,* 445 Mich 284, 286; 517 NW2d 734 (1994).

Affirmed.