# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

VINCENT JUNIOR HUDSON,

Defendant-Appellant.

UNPUBLISHED
December 19, 2017

No. 333727
Monroe Circuit Court
LC No. 16-242523-FH

Before: MURRAY, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 46 to 180 months' imprisonment. His sentence was enhanced under the repeat controlled substance offender statute, MCL 333.7413(2). We affirm.

## I. SEARCH AND SEIZURE

Defendant first argues that the trial court erred in denying his motion to suppress evidence, which included crack cocaine, marijuana, and two BB guns. Defendant contends that these items were discovered during a warrantless search that was not permitted pursuant to his parole conditions. We disagree.

"This Court reviews a trial court's factual findings at a suppression hearing for clear error, and the court's ultimate ruling de novo." *People v Maggitt*, 319 Mich App 675, 681-682; ___ NW2d ___ (2017).

"The Fourth Amendment of the United States Constitution, and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000) (citations omitted). In general, law enforcement officers are required to obtain a warrant before executing a search. *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001). Some exceptions to the warrant requirement exist, one of which is "the government 'special needs' or regulatory exception." *People v Woods*, 211 Mich App 314, 317; 535 NW2d 259 (1995). In the context of probation, the United States Supreme Court has held that "[a] State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, . . . 'presents special needs' beyond normal law enforcement that may justify

-1-

departures from the usual warrant and probable cause-requirements." *Griffin v Wisconsin*, 483 US 868, 873-874; 107 S Ct 3164; 97 L Ed 2d 709 (1987). Additionally, in *Samson v California*, 547 US 843, 852; 126 S Ct 2193; 165 L Ed 2d 250 (2006), the United States Supreme Court recognized that where a parolee was clearly aware of a parole condition allowing searches at any time, where the parolee accepted such a condition, this amounted to a significant diminishment of the parolee's right to privacy. Thus, prisoners, parolees, and probationers are subject to searches pursuant to this exception to the warrant requirement "as long as the searches meet reasonable legislative or administrative standards." *Woods*, 211 Mich App at 317 (quotation marks and citation omitted). Also at issue in this appeal is the consent exception to the warrant requirement, "which allows a search and seizure when consent is unequivocal, specific and freely and intelligently given." *People v Marsack*, 231 Mich App 364, 378; 586 NW2d 234 (1998) (citations omitted). "The validity of the consent depends on the totality of the circumstances." *Id*. (citation omitted.)

Initially, defendant contends that the officers did not have the consent of defendant's mother, Barbara Hudson, the owner of the house to search the residence. Hudson testified that when the officers arrived, she asked them if they had a warrant, and was told that they did not need to have one. She further testified that the officers "[came] in right behind [her] when [she came] in the door." Conversely, Detective Brent Cathey testified that he asked Hudson if she was aware of defendant's parole conditions, and then asked for her permission to search the house. Detective Cathey testified that Hudson agreed to allow them to execute a search, then unlocked the door and allowed the officers inside. Detective Cathey also testified that Hudson gave consent to search the entire house. Ultimately, the trial court found Detective Cathey's testimony to be more credible, and agreed that the officers obtained consent from Hudson before entering the house. The trial court stated that it "believe[d] the testimony of [Detective Cathey] that he advised [Hudson] that they wanted to search, and that she consented to [the] search." The trial court's finding was based on its credibility determinations, and well-supported by facts in the record. Therefore, considering the totality of the circumstances, *Marsack*, 231 Mich App at 378, we conclude that the trial court's finding that Hudson gave consent to search the house was not clearly erroneous.

Alternatively, defendant argues that the terms of his parole order allowing warrantless searches are limited to searches undertaken for the purpose of parole revocation, not general criminal investigations. At the evidentiary hearing on defendant's motion to suppress, defendant's parole officer, Linda Manni ("Manni"), testified that defendant's parole order, a copy of which was introduced as an exhibit at the suppression hearing, contained a condition that stated:

> Written consent to search the parolee's person and/or property, [pursuant to] MCL 791.238(19).[1] I voluntarily consent to a search of my person and property upon demand by a peace officer or a parole officer. If I do not sign this written

---

[1] At trial, defendant's parole officer misstated the applicable statute as MCL 791.238(19). The correct statute is MCL 791.236(19).

consent[,] I understand that my parole may be rescinded or revoked. [Footnote added.]

Detective Cathey testified that after receiving an anonymous tip about a narcotics transaction, he searched the license plate of the vehicle involved and the vehicle was registered to defendant at the address of 712 Norwood. Detective Cathey determined that defendant was a parolee and contacted Manni before making contact with defendant. Manni informed Detective Cathey of the parole condition authorizing searches related to defendant, and the two mutually agreed to conduct a search of defendant's residence. Therefore, defendant's argument that the search was for a criminal investigation is unavailing, particularly where defendant does not address the important fact that Detective Cathey and Manni made an agreement to search defendant and defendant's residence, which buttresses the reasonable conclusion that the search of the home was initiated to determine whether defendant was violating his parole order.

The scope of the search permitted by defendant's parole order included anything in the home or on defendant's person, regardless of whether the parolee was residing in another person's home when the search took place. Additionally, Manni testified that she performed a house call for every new parolee, and had previously explained to Hudson that the conditions of defendant's parole would not only include searches of defendant, but also could include searches of her house. Accordingly, we agree with the trial court that the search of defendant's person and the house constituted a lawful exception to the Fourth Amendment requirement "that searches be conducted pursuant to warrants and be based on probable cause." *Woods*, 211 Mich App at 317.

## II. OFFENSE VARIABLE 19

Defendant next argues that the trial court erred when it assessed 10 points pursuant to offense variable 19 ("OV 19"). We disagree.

"Claims of scoring error or that the trial court relied on inaccurate information when determining a sentence must be preserved by raising the issue at sentencing, in a motion for resentencing, or in a proper motion to remand filed with this Court." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012) (quotation marks and citation omitted). Defendant did not object to the scoring of OV 19 at sentencing, and failed to file a motion for resentencing or a motion to remand. Accordingly, this issue is unpreserved. Unpreserved claims of error are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (Citation omitted.)

Defendant was assigned 10 points under MCL 777.49(c), for circumstances where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." This Court has defined interference with the administration of justice as activity which "hampers, hinders, or obstructs the process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013) (citations omitted). "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d

401 (2016). The following actions have been considered to qualify for an assignment of 10 points for OV 19: "providing a false name to the police, threatening or intimidating a victim or witness . . . fleeing from police contrary to an order to freeze, attempting to deceive the police during an investigation . . . and committing perjury in a court proceeding." *Hershey*, 303 Mich App at 343-344 (citations omitted). To support the scoring of the offense variables, the trial court may rely on inferences drawn from the record evidence. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014).

In this case, the record evidence supported the trial court's conclusion that defendant interfered with the administration of justice by lying to the police. For example, during trial Detective Cathey testified that upon entering 712 Norwood, he observed defendant sitting on a couch, with a jacket draped over him, and he was moving something under the jacket. When defendant stood up at the request of the police, a clear plastic container filled with crack cocaine was discovered on the couch. According to Detective Cathey, the crack cocaine was situated close to defendant's leg when he was sitting, so it moved when defendant stood up. When the police searched defendant's person, they recovered $937 in cash held on different parts of his person; his front pockets, back pocket, and his wallet, which is indicative, according to Detective Cathey, of narcotics trafficking. Notably, defendant informed the police that he was unemployed. During subsequent questioning by the police, defendant denied that the drugs were his. Under the circumstances, the trial court reasonably inferred that defendant lied in order to deceive the officers and prevent them from discovering that the crack cocaine belonged to him. Additionally, contrary to defendant's assertions, there is no indication in the record that the trial court based its sentence on defendant's refusal to admit guilt. *People v Yennior*, 399 Mich 892; 282 NW2d 920 (1977). Accordingly, defendant is not entitled to resentencing.

Affirmed.


/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood