# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARRIS ANTHONY PHARMS,

        Defendant-Appellant.

UNPUBLISHED
January 11, 2018

No.  335439
Kent Circuit Court
LC No.  15-010506-FH

Before:  METER, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of possession with intent to distribute more than 50 but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*); possession with intent to distribute less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*); knowingly keeping or maintaining a structure or place that is frequented by persons unlawfully using a controlled substance or that is used for unlawfully keeping or selling a controlled substance (maintaining a drug house), MCL 333.7405(1)(d); and unlawful possession of a device or weapon that uses an electrical current to incapacitate, injure, or kill (possession of a taser[1]), MCL 750.224a(1).  The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 17½ to 40 years for the possession of cocaine with intent to distribute conviction, 10 to 25 years for the possession of heroin with intent to distribute conviction, 1 to 15 years for the maintaining a drug house conviction, and 2 to 15 years for the possession of a taser conviction.  On appeal, defendant challenges his convictions on a variety of grounds.  We affirm.

---

[1] Because it is unclear from the record whether the taser in question was a specific trademarked weapon known as a "Taser," we will use the generic form "taser," which is "commonly applied to a device that delivers an electric charge through barbs that can be propelled several feet away and penetrate clothing or skin." *People v Yanna*, 297 Mich App 137, 140; 824 NW2d 241 (2012).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Detectives Danny Wills and Mark Terpstra of the Kentwood Police Department's Special Investigations Unit became interested in defendant as a possible drug trafficker after interviewing a suspect, Andrea Crysler, whom they had observed deliver cocaine and heroin to another person. Crysler told detectives that she obtained cocaine and heroin from defendant, whom she identified in court, and then sold it. Crysler met with defendant in various places to pick up drugs, including at his apartment. Crysler had defendant's information in her cellular phone, which detectives seized after her arrest.

After speaking with Crysler, Terpstra and Wills went to defendant's apartment, accompanied by Detective Russell Mazarka and Sergeant Jeffrey Leonard.[2] The officers were all wearing clothing that identified them as police officers. Defendant lived on the third floor of an apartment building. As Terpstra, Mazarka, and the parole agent went to the third floor, Wills and Leonard went through the building on the second floor to an exterior staircase at the back of the building and positioned themselves on a landing between the second and third floors. Terpstra testified that he looked out a window in the third floor hallway as he approached defendant's apartment, and saw two bags containing a "white substance consistent with cocaine" fly through the air "at a downward angle." Terpstra testified that there were no balconies in the area from which the bags could have been thrown other than the balcony of defendant's apartment. Wills testified that he saw the bags fall past the outside stairs "from above." Immediately after seeing the bags fall, Wills saw defendant standing on the balcony of his apartment. Wills tried to speak with defendant, but defendant retreated into his apartment. Leonard also observed the bags falling and believed, based on their size, that they each contained an ounce of cocaine; he alerted the other officers to the bags. Leonard also opined that the angle of the bags' descent meant that they could have only come from defendant's balcony.

Terpstra recovered the two bags and a black digital scale that was found nearby. Based on the coloration of the substances inside the bags, Terpstra initially believed that one bag contained cocaine and the other contained heroin. Terpstra took the items back to the station and prepared an affidavit for a search warrant. The remaining officers secured the scene. Defendant was in his apartment; after initially refusing to come out, defendant exited the apartment. He was the only occupant. After the warrant was obtained, a police search of the apartment revealed plastic bags with torn corners; Leonard testified that this was consistent with the packaging of drugs for sale. Wills seized an address book, seven cellular phones, and a functioning taser. After the search warrant was issued, Leonard conducted another search of the area in which the bags of cocaine were thrown, and discovered two additional, larger bags, one containing a white powder and one containing a grey powder. Leonard opined from their position in the bushes next to the rear wall of the apartment building and the fact one of the bags was ripped that they had also been thrown from above.

---

[2] Although this information was kept from the jury, the officers were also accompanied by defendant's parole agent, who is not named in the lower court record.

Of the two bags recovered by Terpstra, one contained 16.38 grams of crack cocaine, while the other contained 6.55 grams of a substance that was not tested. The bags found by Leonard contained 54.56 grams of cocaine and 24.18 grams of heroin.[3] Leonard testified as an expert in drug trafficking and stated that cocaine typically sold for $80 to $100 per gram, and that 25 grams of heroin would sell for about $2,000. Leonard testified that personal users of drugs did not typically purchase thousands of dollars' worth (i.e., hundreds of individual doses) of a substance at one time.

Data extracted from some of the cellular phones seized revealed numerous text messages that Wills testified used slang for the buying and selling of cocaine and heroin.

Before trial, defendant moved to suppress all of the items seized under the search warrant, arguing that Terpstra's affidavit contained false statements that the magistrate should not have considered and that, even considering the allegedly false statements, it did not provide sufficient probable cause for a warrant to issue. Defendant further argued that if the items seized under the search warrant were suppressed, the charges against him should be quashed for lack of evidence. The trial court denied his motion. Defendant argued at trial that there was no proof that any of the drugs found were his, noting that no drugs were found in his apartment. The jury convicted defendant as described. This appeal followed.

## II. MOTION TO SUPPRESS/QUASH

Defendant argues that the trial court erred when it determined that the search warrant was valid and denied his motion to suppress the evidence seized from his apartment and to quash the charges against him. We disagree. We review de novo whether the trial court properly applied the law regarding suppression of evidence to the facts. *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011). We review for clear error factual findings underlying the trial court's decision on a motion to suppress. *People v Martin*, 271 Mich App 280, 297; 721 NW2d 815 (2006). We review a trial court's decision on a motion to quash for an abuse of discretion. *People v McKerchie*, 311 Mich App 465, 470-471; 875 NW2d 749 (2015).

The United States and Michigan Constitutions both guarantee the right of citizens to be free from unreasonable searches and seizures. See US Const, Am IV; Const 1963, art 1, § 11; *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). For that reason, police officers must normally obtain a search warrant before conducting a search or establish that an exception to the warrant requirement applies. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). A magistrate may authorize a search warrant if the facts stated in the supporting affidavit establish probable cause for the search. MCL 780.651(1); MCL 780.653; *Franklin*, 500

---

[3] The forensic scientist who performed the controlled substances testing in this case testified that, according to policy, he did not test the smaller bag of white powder weighing 6.55 grams. The laboratory policy was not to test additional samples if they would not alter the sentencing consequence for the case; in other words, once the testing had revealed at least 50 grams of cocaine, and considerably less than 50 grams of heroin, there was no need for the scientist to test an additional bag of weighing only 6.55 grams.

Mich at 101. A magistrate has probable cause to authorize a search warrant when, reading the warrant and the underlying affidavit in a "common-sense and realistic manner," there is "a substantial basis" for concluding that there is a " 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992), quoting *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

An affidavit underlying a search warrant is presumptively valid. *Franklin*, 500 Mich at 103-104, citing *Franks v Delaware*, 438 US 154, 171-172; 98 S Ct 2674; 57 L Ed 2d 667 (1978). However, a defendant who establishes by a preponderance of the evidence that the affiant deliberately made a false statement or made a statement with reckless disregard for its truth (or intentionally or recklessly omitted material information) may be entitled to have the warrant voided if the affidavit's remaining content was insufficient to establish probable cause. *Franklin*, 500 Mich at 104, citing *Franks*, 438 US at 155-156.; *People v Stumpf*, 196 Mich App 218, 224-225; 492 NW2d 795 (1992). The trial court must suppress the evidence seized under an invalid search warrant. *Stumpf*, 196 Mich App at 224.

Terpstra stated in his affidavit that officers had received information from a confidential informant that defendant had been selling cocaine and heroin in the Kentwood and Grand Rapids areas. He stated that officers had received additional information that defendant was "utilizing his residence 4715 Drummond #302 to keep and deliver cocaine and heroin." Terpstra then described what he and Leonard had seen at defendant's apartment building:

> Upon approach to conduct the knock and talk, your affiant along with Sgt. Leonard observed several items being thrown from the porch area of the third floor. The items came from the porch area of 4715 Drummond #302, there are no other 3rd story porches or windows in the area. I recovered the items from the ground. The items thrown were a bag of cocaine, a bag of heroin,[4] and a scale. Immediately after the items were thrown, Det. Wills observed defendant standing on the porch. The cocaine field tested positive.

Defendant notes that Terpstra admitted at the hearing on the motion to suppress that he could not see the apartment's balcony from the hallway and that he did not see the person who had thrown the bags. Rather, Terpstra testified that all he saw was the two bags flying past the window at the end of the hallway. Defendant argues that this testimony shows that Terpstra intentionally or recklessly included a false statement in his affidavit by implying that he had seen drugs actually being thrown by a person from the balcony. We disagree.

---

[4] These statements appear to be Terpstra's opinion based on the coloration of the substances in the bags, as the bag of heroin had not yet been recovered. Although Terpstra could have explained that his opinion of the bags' contents was based on his observations in the field, we do not find that this statement was made with reckless indifference to its truth or falsity. *Franklin*, 500 Mich at 104. In fact, given that one of the bags was never tested, it is possible that Terpstra's statement was factually accurate.

When analyzed out of context, the statement that he "observed some items being thrown" suggests that Terpstra actually saw someone doing the throwing, which would have been false. But courts do not read the statements from an affidavit in isolation and out of context to reach a strained construction; courts read the affidavits in a common sense and realistic manner. *Russo*, 439 Mich at 604. When given a common sense reading, Terpstra's assertions are consistent with his testimony at the hearing.

Terpstra never stated that he saw anyone throw the items. Rather, he asserted that he had seen the bags "being thrown from the *porch area*" of defendant's apartment, and that there were "no other 3rd story porches or windows *in the area*." By repeatedly referring to the "porch area" and informing the reader that there were no other porches or windows in that area, Terpstra effectively conveyed that he did not actually see a person throwing the items from defendant's apartment's balcony, but that he inferred from the fact that there were no other windows or porches in the area from which the items could have been thrown that they must have been thrown from that location. Terpstra testified consistently with his affidavit at the hearing on defendant's motion. The trial court found that there was nothing "obviously untruthful" about Terpstra's averment, and it specifically found that the affidavit was not "untruthful or intentionally or recklessly false in any way." "In fact," the court stated, "it appears to me there's every reason to think it's an accurate portrayal of what was observed, and there's no reason to think that it isn't."

Although Terpstra arguably could have used more precise language in the affidavit, there is no evidence that he knowingly, intentionally, or recklessly failed to include a detail that was material to the assessment of probable cause. *Stumpf*, 196 Mich App at 224-225. Because Terpstra's assertions were not false on their face and in fact were consistent with the testimony and evidence at the hearing, the trial court did not clearly err when it found that Terpstra did not knowingly, intentionally, or recklessly include a false statement in his affidavit or leave out a fact that was material to the determination of probable cause. *Martin*, 271 Mich App at 297. The trial court therefore did not err when it denied defendant's motion to invalidate the search warrant on the ground that the affidavit in support was false or omitted material details.

Further, the affidavit provided a substantial basis for concluding that defendant had possessed the controlled substances that were recovered and that he had thrown them from his balcony. From this, the magistrate could conclude that there was a fair probability that additional controlled substances or evidence of drug trafficking might be found in defendant's apartment. Therefore, the search warrant was valid. *Russo*, 439 Mich at 604. And because the warrant and subsequent search were valid, the trial court did not abuse its discretion when it denied defendant's motion to quash. *McKerchie*, 311 Mich App at 470-471.

Additionally, defendant was on parole at the time of the search, and it was undisputed that defendant's parole agent accompanied the officers to the apartment to conduct a search on the basis of evidence that defendant might be violating his parole. A parolee has a diminished right to privacy and, for that reason, the state may properly intrude upon a parolee's privacy in ways that would not otherwise be tolerated under the Fourth Amendment. *Samson v California*, 547 US 843, 850, 853; 126 S Ct 2193; 165 L Ed 2d 250 (2006). A parole agent may search a parolee's person or property if, in relevant part, the parole agent has reasonable cause to believe that the parolee has violated a condition of his or her parole. See Mich Admin Code, R

791.7735. A search conducted pursuant to such a regulation does not violate the Fourth Amendment. See *People v Woods*, 211 Mich App 314, 316-319; 535 NW2d 259 (1995).

Here, defendant's parole agent was with the officers when they observed what appeared to be bags of cocaine flying through the air from an area that suggested that they had come from defendant's balcony. Wills observed defendant standing on the balcony immediately thereafter, and at least one of the bags field tested positive for cocaine. Under those circumstances, the parole agent had reasonable cause to believe that defendant had possessed cocaine in violation of the terms of his parole and could have searched defendant's apartment even without a warrant. Consequently, even if the search warrant at issue were invalid, the officers could have lawfully searched defendant's apartment consistent with the requirements of the Fourth Amendment under the parole exception.

Because the search did not run afoul of the Fourth Amendment, there was no basis for suppressing the evidence seized from the apartment. See *People v Reese*, 281 Mich App 290, 295-296; 761 NW2d 405 (2008).

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also challenges the sufficiency of the evidence in support of certain convictions. We review a challenge to the sufficiency of the evidence by examining the "record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

### A. POSSESSION WITH THE INTENT TO DELIVER COCAINE

Defendant argues that the prosecution did not present sufficient evidence to establish that he possessed more than 50 grams of cocaine with the intent to deliver.[5] We disagree.

In order to convict defendant, the prosecution had to prove that defendant possessed more than 50 grams but less than 450 grams of a controlled substance, MCL 333.7401(2)(a)(*iii*), and that—in relevant part—he possessed it with the intent to deliver it, MCL 333.7401(1). Possession may be actual or constructive. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992). A person constructively possesses a controlled substance if he or she knows about the controlled substance and has the right to exercise control over it. *Id*. But a person's presence in a location where a controlled substance is found is not enough to establish constructive possession. *Id*.

The prosecution presented evidence that officers discovered four bags containing cocaine and heroin outside defendant's apartment building after they went to his apartment to investigate whether he had any involvement in an earlier drug deal. Multiple officers testified that they saw

---

[5] Defendant does not challenge the sufficiency of the evidence related to his conviction for possession with intent to deliver less than 50 grams of heroin. MCL 333.7401(2)(a)(*iv*).

two bags of what they thought was a controlled substance flying through the air from the balcony area, and Wills testified that he saw defendant standing on that balcony immediately thereafter. Wills further testified that he did not see anyone else in the area who could have thrown the bags. Although none of the officers actually saw defendant throw anything from the balcony, a reasonable jury could infer that defendant was the person who threw them. Terpstra seized two bags and a scale immediately after these events; at least one of those bags contained crack cocaine. About an hour and a half later, Leonard discovered two larger bags nearby; one torn bag of cocaine was lodged in a bush and a bag of heroin was found behind a bush.

On appeal, defendant appears to concede that there was some evidence to connect him to the controlled substances found by police. He maintains, however, that the evidence only connects him to the two smaller bags that were initially seized after he was seen on the balcony, that his connection to the later-found bags was purely speculative, and that the evidence was therefore insufficient to establish that he possessed more than 50 grams of cocaine. We disagree.

When evidence is relevant and admissible, "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). In such cases, it is for the fact-finder alone to "determine what inferences may be fairly drawn from the evidence and determine the weight to be accorded those inferences." *Id*.

Defendant's argument assumes that the officers' testimony about the two bags flying through the air must necessarily have referred to the two bags that Terpstra seized first. Moreover, the testimony did not establish that defendant could not have thrown additional items from the balcony before the officers were in a position to see the items being thrown. From this testimony and evidence, a reasonable jury need not necessarily have concluded that the two bags that the officers saw flying through the air as they approached defendant's apartment were the two that Terpstra seized immediately after Wills observed defendant on the balcony. *Id*. Even if that were not the case, however, there was still evidence to connect all the drugs recovered to defendant.

The testimony that the larger bag of cocaine was lodged in a bush and had a tear suggested that that bag had been thrown or dropped from a height. The fact that a bag of heroin was found behind that same bush suggested that the heroin was also thrown or dropped. The evidence that officers observed defendant on the balcony shortly after they saw the bags travelling through the air from that area strongly suggested that he had thrown them in an attempt to conceal evidence that he possessed controlled substances. The evidence also suggested that defendant knew that police officers had arrived or were on their way. Under the circumstances, a reasonable jury could conclude that defendant discarded all controlled substances that he possessed and attempted to discard other evidence implicating him in drug trafficking. The fact that the two larger bags were found in the same general area as the first two, along with scale that could be used in the packaging of controlled substances for sale, suggests that all of the items were thrown from the balcony at about the same time and for the same reason. *Id*. Accordingly, the jury could reasonably find that defendant had possessed all four bags and the scale, and that he discarded all of those items by throwing them from his balcony.

Defendant also suggests that it was possible that those two larger bags were deposited by someone else. He even states that someone else from the apartment building could have deposited the drugs after the officers' arrival because the officers did not secure the rear of the building. It is in theory possible that someone else deposited two large and valuable bags of cocaine and heroin near the location where defendant had thrown the first two bags. But the testimony and evidence was also consistent with the conclusion that all of the drugs and the scale were all deposited in that area at about the same time and that it was defendant who had deposited them there. For example, there was evidence that the larger bags could not have been there for very long. There was a tear in one bag without evidence of significant spillage. The bags did not appear to have been exposed to the elements for very long. Moreover, the officers brought a marked cruiser to the back of the apartment and illuminated the rear of the building while the officers were trying to get defendant to surrender. It is unlikely that someone would deposit large bags of illegal narcotics in an area where police officers had aimed a spotlight and were using a loudspeaker to broadcast commands to defendant. Neither Leonard nor Wills saw anyone besides police officers outside the rear of the building during the relevant time period. And officers were posted to watch the entrances to defendant's apartment building and defendant's balcony throughout the time they were there. From that evidence, the jury was free to conclude that the four bags and the scale were thrown from the balcony at the same time, and that defendant was the person who threw them. *Hardiman*, 466 Mich at 428. The prosecutor in any event was not required to negate every reasonable theory consistent with innocence. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The jury also heard evidence that established that defendant possessed all four bags with the intent to deliver. The jury heard evidence that the amount of cocaine and heroin involved far exceeded the amounts that one would normally have for personal use. There was also testimony that bags with torn corners were found in defendant's apartment and that the corners of bags are commonly used by drug dealers in the packaging of drugs for sale. The jury also heard that digital scales are an important tool in drug trafficking. An officer also stated that seven cell phones were found in defendant's apartment; two of the phones were linked to email accounts associated with defendant. The phones also had text messages that were indicative of sales involving heroin and cocaine. Finally, the jury heard Crysler testify that she sold drugs for defendant and that she met with him at least once every day to retrieve more drugs. Taken together, this evidence was sufficient to establish that defendant possessed the cocaine and heroin with the requisite intent. See *Wolfe*, 440 Mich at 524 (stating that the intent to deliver may be established by the quantity of narcotics, the packaging, and other circumstantial evidence).

## B. MAINTAINING A DRUG HOUSE

Defendant also argues that there was insufficient evidence to establish anything more than an isolated instance of drug possession at the apartment, which he claims was insufficient to establish the keeping or maintaining element of the offense of keeping or maintaining a drug house. We disagree.

To prove this charge, the prosecution had to present evidence to establish that defendant knowingly kept or maintained, in relevant part, a dwelling that he "used for keeping or selling controlled substances . . . ." MCL 333.7405(1)(d). Our Supreme Court has held that the terms

keep or maintain imply "usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence" to the same effect. *People v Thompson*, 477 Mich App 146, 155; 730 NW2d 708 (2007). Evidence of isolated or incidental use of the dwelling for selling a controlled substance is not sufficient—there must be evidence that the selling of controlled substances was a substantial purpose and was continuous to some degree. *Id*. at 156.

There was evidence that defendant had been living at the apartment for some time before the officers arrested him on October 7, 2015. Officers discovered mail addressed to defendant at the apartment, and Crysler stated that she knew that he had been staying there for some time. As already discussed, officers discovered a significant amount of cocaine and heroin outside defendant's apartment under circumstances from which a reasonable jury could infer that he had recently possessed the drugs and had thrown them in an attempt to conceal his possession. From this, the jury could infer that defendant had earlier had the heroin and cocaine in or on the balcony of his apartment. The plastic bags with the torn corners and the scale were consistent with packaging the drugs for sale. Therefore, there was evidence that permitted an inference that defendant was using his apartment to store and package the heroin and cocaine that was discovered behind his apartment building. *Hardiman*, 466 Mich at 428. When considered with the evidence of defendant's drug transactions, such as Crysler's testimony that she met defendant at his apartment several times to obtain drugs and the phones found in the apartment containing messages that referred to drug transactions, there was evidence from which a reasonable jury could infer that he used his apartment to store and package narcotics and that he conducted business from that location, including negotiating sales and delivering cocaine or heroin to Crysler for distribution to individual purchasers. Therefore, there was sufficient evidence to support the finding that defendant kept or maintained his apartment in substantial part for the purpose of keeping or selling controlled substances and that he did so continuously to some degree. *Thompson*, 477 Mich App at 156.

## C. POSSESSION OF A TASER

Defendant further argues that there was insufficient evidence to show that he possessed a taser. In making that argument, he relies on his earlier contention that the evidence from his apartment must be suppressed. However, as already discussed, the trial court did not err when it concluded that the officers lawfully searched defendant's apartment under a valid search warrant. The evidence that officers found a functional taser on defendant's coffee table was sufficient to establish the elements of the offense. See MCL 750.224a(1).

## IV. STANDARD 4 BRIEF

In his Standard 4 brief,[6] defendant raises several additional errors. He claims that the trial court lacked jurisdiction over him because the felony complaint was not properly signed and

---

[6] A supplemental appellate brief filed in propria persona pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4.

sworn,[7] he argues that there were numerous errors at his preliminary examination such that he should not have been bound over to the circuit court, and he argues that the prosecution engaged in misconduct and that his defense lawyer was ineffective. He additionally argues cumulatively to the arguments advanced in his main brief. We have carefully considered each of these claims of error and conclude that they are without merit.

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

---

[7] We note that a properly executed felony complaint appears in the circuit court's file.