*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDRE DIMETRE SIMS,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2024

No. 362747
Kent Circuit Court
LC Nos. 21-002685-FC; 21-
        002690-FH

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Defendant, Andre Dimetre Sims, was convicted after a jury trial of first-degree murder, MCL 750.316; carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and being a felon in possession of ammunition (felon-in-possession), MCL 750.224f. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve a life sentence without the possibility of parole for the first-degree murder conviction, two years' imprisonment for the felony-firearm conviction, and 48 months to 80 years' imprisonment for the felon-in-possession conviction. Defendant now appeals by right, arguing that the trial court erred by denying his motion to suppress evidence because his arrest and the search and seizure of his property was unlawful, and, therefore, all evidence discovered as a result of his arrest and the search should be excluded as well. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of defendant's murder of the victim on the evening of January 3, 2021, following a disagreement with the victim's grandson, IG. Defendant was on parole for a separate conviction at the time of the murder. On May 12, 2020, Defendant signed his parole conditions; they included terms that he not engage in any criminal behavior, not own or possess a firearm or be around anyone who was in possession of a firearm, not possess any other weapon or ammunition, and that he was to abide by other special conditions imposed and with oral or written orders of the field agents. His special conditions of parole included consent to have a peace officer or parole officer search his person or property on demand as required by MCL 791.236(19).

IG testified that on January 3, 2021, he met up with his mother's cousin JC and defendant that night to purchase marijuana. He testified that defendant had a gun in the back seat of the truck JC was driving, and that defendant and JC were planning to conduct a robbery for marijuana. He testified that he wanted to "get home" and that he reached into the backseat, grabbed defendant's gun, and ran away from the vehicle back to his grandmother's home where he was living at the time. IG testified that while he was explaining the situation to his grandmother, someone knocked at the door, and when his grandmother answered, she was shot twice.[1] He testified that he heard defendant's voice ask if IG was there before the shots were fired. IG was questioned by Detective Adam Baylis of the Grand Rapids Police Department (GRPD) later that night, and the detective testified that IG said that he heard either JC's voice or defendant's voice at the door.

An expedited parole absconding violation warrant for defendant was obtained the next day, stating that he was a person of interest in a homicide and possibly in possession of a firearm. Detective Lucas Nagtzaam and Probation Agent Jordan Becklin arrested defendant on January 5, 2021, when he arrived in his sister's vehicle at Alternative Directions for a meeting with his parole agent, Agent Lorinda Beedell. His sister's vehicle was searched with her consent, and defendant's backpack, located in the front passenger seat and identified by his sister as belonging to defendant, was searched as well. Law enforcement found ammunition and firearm magazines in the backpack, and defendant was charged with felon-in-possession.

Defendant called his siblings from jail with "urgency," asking his sister if the police had come to her house and to throw away an item he always left at her home. He also told his sister "I need you to be on it," and talked to his siblings about getting his tablet; defendant also provided his tablet password and asked for phone numbers. Police stopped defendant's brother's vehicle while leaving the sister's home. Law enforcement found a .45 caliber firearm in the vehicle and later confirmed it was the one used in the shooting.

Law enforcement also obtained a warrant to search defendant's sister's house and located an iPhone on top of a bathroom cabinet. Detective Timothy DeVries testified that he imported data from the iPhone into Google Earth to identify where the phone's user was located. Detective DeVries explained that he downloaded the digital file system from the iPhone into Google Earth "and it will tell me the dates and times and the latitudes and longitudes and approximate location of where the phone has been." The settings feature of the phone he analyzed, once it was opened with the password, identified it as "Andre's phone." Detective DeVries testified that the iPhone was near a Speedway station at Eastern Avenue and 44th Street at 10:51 pm. At 11:16 pm, it was near 525 Eastern Avenue SE, where defendant's girlfriend lived. At 11:43 pm, the iPhone was directly in front of 1242 Alpine Avenue—the victim's home. The phone was later found at 525 Eastern Avenue, and on January 5 at 11:34 am, the phone was located at Alternative Directions—where defendant met with his parole agent. Defendant was charged with homicide and felony-firearm charges as a fourth-offense habitual offender. Defendant's charges of homicide, felony-firearm, and felon-in-possession were consolidated. Defendant moved to represent himself *in propria persona* and to waive counsel, and the trial court granted both motions.

---

[1] A crime scene technician found two .45 caliber shell casings at the scene of the shooting.

Defendant now appeals.

## II. MOTION TO SUPPRESS

Relying on *People v Mead*, 503 Mich 205; 931 NW2d 557 (2019), defendant argues that the trial court erred by denying his motion to suppress because he did not give free and voluntary consent to the search of his backpack and his sister lacked actual or apparent authority to consent to the search; therefore, the search was unreasonable. Because *Mead* is factually distinguishable and defendant was a parolee at the time of the search, we disagree.

We review constitutional questions de novo. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). "This Court reviews for clear error a trial court's findings of fact made after a suppression hearing, but reviews de novo the ultimate decision on a motion to suppress." *People v Rodriguez*, 327 Mich App 573, 583; 935 NW2d 51 (2019). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000); see US Const, Am IV; Const 1963, art 1, § 11. There are three ways that we may conclude that a consent search was unreasonable: "consent wasn't voluntary, the consent-giver lacked authority, or the scope of the search exceeded the consent." *Mead*, 503 Mich at 216. The burden is on the prosecution to "prove that consent was freely and voluntarily given." *Id*.

In *Samson v California*, 547 US 843, 852, 857; 126 S Ct 2193; 165 L Ed 2d 250 (2006), the United States Supreme Court stated that "parolees have severely diminished privacy expectations by virtue of their status alone" and held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." See also *People v Glenn-Powers*, 296 Mich App 494, 502; 823 NW2d 127 (2012) (noting that probationers have a "diminished expectation of privacy and, accordingly, may be subjected to searches that might be unreasonable if conducted on members of the general public").

In the present case, defendant was arrested after his sister drove him to his appointment with Agent Beedell. In the process of executing defendant's parole absconder warrant, Detective Nagtzaam and Agent Becklin asked defendant's sister if they could search her car, and she consented to the search. "An officer must obtain consent to search from someone who has the authority to give it," *Mead*, 503 Mich at 217. Notably, the defendant in *Mead* was a passenger in a vehicle that was subject to a traffic stop. He was holding his backpack and had a legitimate expectation of privacy in the backpack. *Id*. at 214. He was not a parolee, however. Here, defendant's sister had that authority to consent to the search. She also identified the backpack in the front passenger seat as belonging to defendant. They proceeded to search the backpack and found empty handgun magazines, .45 caliber ammunition, and a sling for a rifle or shotgun. The trial court held a hearing on defendant's motion to suppress and ultimately denied defendant's motion, stating that "parolees have even fewer rights than probationers" and that "you can search a parolee without even reasonable suspicion." Indeed, this Court in *People v Woods,* 211 Mich App 314, 317; 535 NW2d 259 (1995) recognized that prisoners, parolees and probationers are

subject to searches without a warrant "as long as the searches meet reasonable legislative or administrative standards."

Moreover, as part of his special conditions of parole, defendant consented to have a peace officer or parole officer search his person or property on demand as required by MCL 791.236(19).[2] We agree that "the parole authorities' duty to supervise parolees such as [defendant] and to obtain all facts and circumstances surrounding any parole violation required that parole officers be vested with search powers over parolees that would be impermissible if directed against ordinary citizens." *United States v Scott*, 678 F2d 32, 34 (CA 5, 1982). Accordingly, the search of defendant's backpack while he was on parole did not violate the Fourth Amendment. And we find the trial court's decision to deny the motion to suppress supported by the evidence. *Rodriguez*, 327 Mich App at 583.

In his Standard 4 Brief,[3] defendant argues that his parole agent did not have "reasonable suspicion" to submit the warrant for defendant's arrest because she did not identify any specific or articulable facts to corroborate the allegations that defendant was possibly in possession of a firearm or a person of interest in a homicide.[4] But this argument does not affect the validity of the search as the search is valid based on defendant's status as a parolee and not on the validity of the arrest. Defendant cites *United States v Scott*, 678 F2d 32, 35 (CA 5, 1982), in support of his argument, where the United States Court of Appeals for the Fifth Circuit defined reasonable suspicion:

> Less stringent a standard than probable cause, reasonable suspicion requires no more than that the authority acting be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a

---

[2] MCL 791.236(19) states as follows: "The parole order must require the parolee to provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer. The written consent must include the prisoner's name and date of birth, his or her physical description, the date for release on parole, and the ending date for that parole. The prisoner shall sign the written consent before being released on parole. The department shall promptly enter this condition of parole into the department's corrections management information system or offender management network information system or into a corresponding records management system that is accessible through the law enforcement information network. Consent to a search as provided under this subsection does not authorize a search that is conducted with the sole intent to intimidate or harass." Defendant signed a written consent to search.

[3] See Administrative Order No. 2004-6, 471 Mich ci, cii, Standard 4 (2004).

[4] Defendant's Standard 4 brief does not contain a statement of the issues presented as required by court rule. See MCR 7.212(C)(5). This failure could constitute abandonment of the issues. See *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). However, parties proceeding *in propria persona* are entitled to more lenity in construing their pleadings than would be lawyers, see *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976), and we will address his arguments accordingly.

-4-

belief in the conclusion mooted-in this instance, that a condition of parole has been or is being violated.

*Scott* goes on, however, to recognize that "[w]here the parole officer discovers or is apprised of such facts, we think that he will seldom be found at fault in acting upon them as did the officer here . . . ." *Id.*

Therefore, the trial court did not err by denying defendant's motion to suppress because the search of defendant's backpack was lawful given defendant's status as a parolee. Accordingly, defendant is not entitled to a new trial.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young